UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS COMPANY L.P.,

Plaintiff,

v.                                                    Case No. 11-2686-JWL

TIME WARNER CABLE, INC., et al.,

Defendants.

## ORDER

Sprint Communications Company L.P. ("Sprint") has brought this patent-infringement action against Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment Company, L.P., Time Warner Entertainment-Advance/Newhouse Partnership, TWC Communications, LLC, and Time Warner Cable Information Services (Kansas), LLC (collectively, "TWC") alleging that TWC's Voice over Internet Protocol ("VoIP") technology infringes ten of its patents. TWC has asserted equitable estoppel and other defenses, by which TWC contends that it reasonably relied on Sprint's conduct to believe that Sprint did not intend to enforce its patents against TWC. On July 31, 2015, both Sprint and TWC filed motions for summary judgment on TWC's equitable defenses.[1] Those motions were decided on December 5, 2016 by the presiding U.S. District Judge, John W. Lungstrum.[2]

---

[1] ECF Nos. 146 and 140, respectively.

[2] ECF No. 285.

Anticipating that Sprint would seek TWC's privileged communications on the basis that TWC's statements at summary judgment waived the attorney-client privilege, TWC has filed a motion for a protective order precluding Sprint from gaining access to its privileged communications (ECF No. 239).  For the reasons set forth below, TWC's motion for protective order is granted by the undersigned U.S. Magistrate Judge, James P. O'Hara.

**<u>Background</u>**

As both parties observe, this court previously has addressed the issue of waiver of attorney-client privilege as it relates to TWC's equitable defenses.  On February 20, 2015, Sprint filed a motion to compel claiming that TWC had waived privilege by putting its attorneys' advice at issue through equitable estoppel defenses and the requisite element of reliance.[3]  The court denied the motion without prejudice because Sprint failed to comply with the meet-and-confer requirements of Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2.[4]  However, the court ordered that, should Sprint re-file its motion, Sprint "should address why its arguments are not precluded by the court's April 16, 2015 order in *Sprint v. Comcast*, Case No. 11-2684 (ECF doc. 698)."[5]  By way of background, on the same day Sprint moved to compel against TWC, Sprint brought a substantively identical

---

[3] The motion was filed in the lead consolidated case, *Sprint Communications Co., L.P. v. Comcast Cable Communications, LLC, et al.*, No. 11-2684 (ECF No. 603).  All subsequent record citations to prior-filed motions to compel and corresponding orders are to the docket in Case No. 11-2684 unless otherwise indicated.

[4] ECF No. 700.

[5] *Id.* at 8–9.

motion to compel against Comcast Cable Communications, LLC, Comcast IP Phone, LLC, and Comcast Phone of Kansas, LLC (collectively, "Comcast").[6]  The court denied Sprint's motion against Comcast, holding Comcast had not waived privilege.[7]  The court rejected Sprint's argument that Comcast put its counsel's advice at issue by pleading a necessary element of its estoppel defense.  Although Comcast's "state of mind, beliefs, and knowledge" were deemed *relevant* to Comcast's affirmative defenses, it simply was not *inextricably merged* with the elements of Sprint's case and Comcast's affirmative defense.  As such, the court held Comcast could establish the element of reasonable reliance with evidence other than its counsel's advice and further noted that Comcast had affirmatively stated it would not offer or rely on the substance of any legal advice or privileged communications to demonstrate its reliance or reason for believing that Sprint did not intend to sue Comcast.

On May 12, 2015, Sprint renewed its motion to compel against TWC.[8]  The court denied the motion, finding Sprint had failed to distinguish its motion against TWC from the court's prior *Comcast* ruling.[9]  The court noted TWC's representation that "just like Comcast, TWC will not offer or rely on any legal advice or communications to

---

[6] ECF No. 606.

[7] ECF No. 698.

[8] ECF No. 749.

[9] ECF No. 836.

demonstrate its reliance or its reasons for believing Sprint did not intend to sue TWC on Sprint's patents."[10]

TWC now asserts that, consistent with its prior representation, it moved for summary judgment on its equitable defenses relying "solely on what its non-attorney business people believed and did to support its reliance claims."[11]  According to TWC, Sprint injected the state of mind of TWC's in-house counsel, Andy Block, into the litigation by claiming in Sprint's summary judgment briefing that "TWC could not have relied on Sprint's misleading silence and conduct to infer that it would not be sued by Sprint because Mr. Block 'anticipated, and was preparing for, this very lawsuit' through his involvement in a joint investigation of Sprint's prior litigation against Vonage in 2007 and because Mr. Block received a letter from Mr. Ball vaguely referring to Sprint patents in 2010."[12]  In TWC's responsive summary judgment briefing, it submitted Block's "full testimony" on his 2007 investigation into the *Sprint v. Vonage* matter and parallel investigation into TWC's Go It Alone rights, to "complete and correct" the record as follows: (1) "Block concluded in 2007 that TWC had the right to Go It Alone by the time he received Mr. Ball's email in 2010"; and (2) "Block participated in the joint *Sprint v.*

---

[10] *Id.* at 6.

[11] ECF No. 248 at 7.

[12] *Id.* at 2 (citing ECF Nos. 161 and 196).

*Vonage* investigation not because he feared a lawsuit from Sprint, but because he was not familiar with the TWC-Sprint relationship at that time."[13]

After Sprint raised the issue of implied waiver, and a subsequent series of exchanges between the parties,[14] TWC filed the instant motion for protective order, anticipating that Sprint would seek its privileged communications on the basis that "TWC's non-privileged statement [at summary judgment] about what its in-house counsel Andy Block did in 2007 (familiarize himself with the Sprint-TWC relationship) and his ultimate conclusion (that, as both Sprint and TWC's business people had already concluded, TWC did not have to worry about a lawsuit from Sprint) waived the privilege."[15]   Opposing TWC's motion, Sprint argues TWC implicitly waived the attorney-client privilege by its use of "attorney-related evidence" at summary judgment.[16] Sprint, however, seeks the production of documents that TWC has withheld as protected by the attorney-client privilege only in the alternative.  Sprint contends that at this stage of the litigation, it would be prejudiced by TWC's use of "attorney-related evidence." Specifically, Sprint argues that "[h]ad TWC not fought Sprint's [prior] waiver motion and made promises to not use attorney beliefs, the Court could have found waiver during

---

[13] *Id.* at 15–16.

[14] It's not entirely clear that the meet-and-confer obligation has been satisfied. However, due to the procedural posture of this case, as well as the substantial briefing involved, the court will rule TWC's motion on the merits.

[15] ECF No. 248 at 1.

[16] ECF No. 256 at 8.

discovery and Sprint could have obtained documents within the subject matter withheld as privileged, and deposed TWC's in-house counsel (along with the 'other witnesses' who supposedly relied on these beliefs) to explore these supported beliefs."[17]  Therefore, Sprint instead claims that TWC should be precluded from using "attorney-related evidence" at summary judgment or trial.

**Statements at Issue**

Sprint cites the following statements contained in TWC's brief in opposition to Sprint's summary judgment motion (ECF No. 191) to support its waiver argument:

- "Well prior Mr. Ball's June 8, 2010 email, then, both Sprint and *TWC witnesses, including Mr. Block, had concluded* that TWC's agreements with Sprint provided the right to offer the VoIP services alone or with other partners free of patent claims by Sprint."[18]

- "*Mr. Block came into his conversation* with Mr. Ball with *this understanding* because when the Vonage matter was pending in the 2007 timeframe, Mr. Block 'educate[d him]self as to what we had been doing with Sprint historically . . . and looked at the agreements and determined that . . . starting in 2003 we had a commercial relationship with Sprint to provide a whole bunch of a suite of . . . VoIP-related services. We also had, with Sprint's understanding and MCI's understanding, we kind of split the country essentially between Sprint and MCI, providing similar suites of services. We had also used Pinetree historically and continue to use Pinetree for certain services and had done those services ourselves in certain markets. And *my assessment at that time* was that the agreement provided us the ability to do that free of interference with Sprint, and even with Sprint's assistance.'"[19]

- "Sprint's actions in contemporaneously communicating specific allegations to Comcast—affirmatively *led TWC to continue its understanding that it had fully*

---

[17] *Id.* at 7.

[18] ECF No. 256 at 4 (quoting ECF No. 191 at 45) (emphasis added by Sprint).

[19] *Id.* at 4–5 (quoting ECF No. 191 at 107–08) (emphasis added by Sprint).

*received the rights to use Sprint's patents, a conclusion reached by* both Sprint and *TWC witnesses, including Mr. Block*, well before the June 8, 2010 communication."[20]

- Mr. Ball's e-mail must also be viewed with the understanding that, at the time it was sent in June 2010, both Sprint and *TWC witnesses, including Mr. Block, had already concluded* that the 2006 Agreement granted TWC the unfettered right to Go It Alone."[21]

Additionally, Sprint takes issue with the following two statements contained in TWC's reply brief in support of TWC's summary judgment motion (ECF No. 227):

- "While participating in that joint investigation, *Mr. Block simultaneously undertook to educate himself* on the unique history between TWC and Sprint *by speaking with* the business people involved in the Sprint-TWC relationship, *and by reviewing TWC's agreements* with Sprint."[22]

- "*Upon learning* that TWC had the rights to do what it was doing and was continuing to do without concern that Sprint would be able to assert its patents against TWC, *Mr. Block* immediately exited the joint investigation."[23]

The court will consider each of the foregoing statements.  To the extent that Sprint asserts any additional sources of waiver, the court finds Sprint has failed to provide sufficient detail as to which additional statements have waived TWC's attorney client

---

[20] *Id.* at 5 (quoting ECF No. 191 at 46) (emphasis added by Sprint).

[21] *Id.* (quoting ECF No. 191 at 153 n.15) (emphasis added by Sprint).

[22] *Id.* (quoting ECF No. 227 at 8) (emphasis added by Sprint).

[23] *Id.* at 6 (quoting ECF No. 227 at 8–9) (emphasis added by Sprint).

privilege,[24] or failed to provide any analysis as to how such statements have resulted in waiver, or both.[25]

**Legal Standards**

The parties agree the *Hearn* approach to considering assertions of at-issue waiver should be applied here.[26]  Under *Hearn*, three things must be present to establish an implied waiver of the attorney-client privilege:

> (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party;

---

[24] *See id.* at 15 (" . . . Sprint's counsel certainly did not agree that TWC could use other portions of Mr. Block's deposition testimony, or place *other* legal beliefs at-issue— like those of TWC in-house counsel Mr. Kumar and contract negotiator Ms. Blecha.") (emphasis in original); *see also* ECF No. 280 at 2 ("TWC . . . also pointed to testimony of other TWC personnel (including attorneys), and actually *submitted declarations* from Mr. Block and Mr. Kumar (both attorneys) in support of its summary judgment motion.") (emphasis in original).

[25] Sprint's opposition to TWC's motion for protective order cites two statements from the declaration of Rajat Kumar, in-house counsel for TWC.  But Sprint's briefing otherwise fails to address the statements as a source of waiver.  Nor does it respond to the below claim in TWC's motion for protective order:

> Although Sprint briefly raised a complaint about a statement contained in a declaration TWC submitted with its motion for summary judgment, TWC responded by explaining that the declaration did not disclose any privileged information, that it was not being used to support any kind of advice of counsel defense, and that Sprint's objection would be untimely because Sprint waited approximately two months before raising any complaint with respect to that declaration.  In the letter Sprint sent in response to TWC's meet and confer letter, Sprint appears to have dropped that claim.

ECF No. 248 at 7 n. 1.

[26] *See Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975); *see also Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699–702 (10th Cir. 1998) (applying *Hearn* test).

> (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; *and*
>
> (3) application of the privilege would have denied the opposing party access to information vital to [its] defense.[27]

In other words, the court will find that a party has implicitly waived a privilege "when the party 'places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure would [be] manifestly unfair to the opposing party.'"[28]  Under the third prong, information will not be found "vital" unless it is available from no other source.[29]

**Analysis**

Sprint asserts TWC has effected at-issue waiver by its affirmative use of "attorney-related evidence" at summary judgment.  Sprint argues that the first and second *Hearn* prongs are satisfied because TWC placed its in-house counsel's beliefs at issue when it volunteered "attorney beliefs about the legal rights between TWC and Sprint based on interpretation of contract and business dealings" to support the reliance element of TWC's equitable estoppel defense.[30]

---

[27] *Seneca Ins. Co. v. Western Claims, Inc.*, 774 F.3d 1272, 1276 (10th Cir. 2014) (quoting *Frontier Ref. Inc.*, 136 F.3d at 701) (emphasis and modification in original)).

[28] *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 430 (D. Kan. 2009) (quoting *Hearn*, 68 F.R.D. at 581)).

[29] *Seneca Ins.*, 774 F.3d at 1277.

[30] ECF No. 256 at 2.

TWC counters it has not made an "affirmative act" insofar as "it was *Sprint* that attempted (improperly) to inject Mr. Block's state of mind into the litigation."[31]  In this regard, TWC argues it "did not offer [Block's] testimony to prove that Mr. Block's belief was correct, nor that anyone at TWC relied on or even knew about Mr. Block's belief, but rather to correct the inaccurate portrayal of Mr. Block's state of mind as claimed by Sprint."[32]  TWC further argues "because Mr. Block's testimony did not reveal the substance of any privileged communications, Sprint cannot prove that TWC put 'privileged' information at issue."[33]

As an initial matter, the court observes that there appears to be some confusion surrounding the second element of the *Hearn* test.  TWC apparently is under the impression that a finding that it has not revealed the substance of any privileged communications is dispositive of whether it has put "privileged information" at issue. But this conflates explicit waiver with at-issue waiver and misconstrues this court's prior orders.  Nevertheless, to the extent Sprint challenges TWC's classification of Block's testimony as "non-privileged," the court will briefly address the issue.

## Whether TWC Has Disclosed the Substance of Privileged Communications

---

[31] ECF No. 270 at 6 (emphasis in original).

[32] ECF No. 248 at 1–2.

[33] *Id.* at 1.

TWC cites the prior orders of this court, specifically, the July 22, 2014 order[34] entered by Judge Lungstrum, and the June 25, 2015 order[35] entered by the undersigned, for the proposition that introducing evidence "concerning the activities of the attorney or the general topic of discussion between attorney and client, or concerning counsel's ultimate legal conclusion, does not waive privilege as long as the substance of the communication is not revealed."[36]  Of course, the undersigned's order, and the portions of Judge Lungstrum's order on which TWC relies, dealt with the issue of *explicit* waiver.[37]  As earlier indicated, to the extent TWC reads those orders to suggest that a finding of implicit waiver is similarly dependent on the disclosure of privileged communications, TWC conflates explicit waiver with at-issue waiver.  However, the undersigned does agree with TWC's assertion that under this court's prior orders, none of the statements with which Sprint takes issue are privileged.

First, the statements regarding Block's participation in the joint investigation and his simultaneous undertaking to educate himself on the "unique history between TWC

---

[34] ECF No. 318.

[35] ECF No. 833.

[36] ECF No. 248 at 1 (internal citations and quotations omitted).

[37] *See* ECF No. 833 at 9 (addressing whether Ball's testimony "*explicitly* waived Sprint's attorney-client privilege") (emphasis added); *see also* ECF No. 318 at 6–10 (addressing "*explicit* waiver") (emphasis added).

and Sprint" merely reveal facts, topics of discussion, and acts of counsel, none of which are privileged.[38]

Second, the statements referencing Block's general legal conclusion that TWC had the right to "Go It Alone" do not reveal privileged information, insofar as those statements do not reveal any substantive communication or attorney analysis behind the conclusion.

And third, although Sprint argues that "the portions cited are obviously attorney beliefs about the legal rights between TWC and Sprint based on interpretation of contracts and business dealings,"[39]  Sprint fails to reconcile its position with prior orders in this litigation from which it has benefitted.  Indeed, in an order dated April 18, 2014, the undersigned considered a motion by defendants to compel Sprint to produce privileged documents on the ground that Sprint waived the attorney-client privilege through Ball's testimony and outside counsel's statements in a separate patent-infringement lawsuit against Vonage Holdings Corp. and Vonage America.[40]  At issue was Ball's testimony that Sprint "proceeded to draft patent applications" because "we

---

[38] *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200, 2006 WL 1867478, at *10 (D. Kan. July 1, 2006) (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 396 (1981) ("[u]nderlying facts are not protected by privilege"); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 675 (D. Kan. 2005) (Neither the acts or services performed by an attorney during the course of his representation, nor the subject matter of meetings with an attorney, are within the attorney-client privilege because they are not "communications").

[39] ECF No. 256 at 2.

[40] ECF No. 228.

were then confident with respect to what we thought was new and unique with respect to [Christie's] inventions."[41]   Defendants also pointed to the opening statements of Sprint's counsel that upon hearing Christie's ideas, "Sprint reacted swiftly and in an unprecedented manner," and that after doing a prior art search, Sprint "found out exactly what [it] suspected, that this really was a patentable invention."[42]   Defendants argued that by making these disclosures regarding Sprint's legal conclusion that Christie's inventions were patentable, "Sprint waived any 'protection with respect to its assessment of patentability.'"[43]   The undersigned disagreed.   The undersigned found that the statements "revealed only Sprint's counsel's ultimate legal conclusion, not any substantive communication or attorney analysis behind the conclusion."[44]   The undersigned therefore held that because Ball's testimony did not reveal privileged communications, Sprint did

---

[41] *Id.* at 11. Joseph Christie, a former Sprint employee, is the named inventor to whom certain patents were issued.

[42] *Id.* at 10.

[43] *Id.* at 11 (quoting ECF No. 154 at 22).

[44] *Id.* at 13 (citing *New Jersey v. Sprint*, 258 F.R.D. at 427–28 (holding that testimony stating that legal counsel advised the defendant that it need not publicly disclose tax shelter issues did not waive the attorney-client privilege because it did not disclose the substance of the legal advice received)). The undersigned also concluded that the "[s]tatements and testimony about *how* Sprint conducted its search for prior art," as well as "testimony regarding Sprint's legal department assessing prior art by comparing it to Mr. Christie's ideas," disclosed only acts performed by counsel, not communications. *Id.* at 12–13.

not explicitly waive the attorney-client privilege.[45]   Judge Lungstrum subsequently upheld that holding.[46]

In a subsequent order, dated June 25, 2015, the undersigned considered a motion by defendants to compel Sprint's testimony and documents related to Sprint's legal department's communications about Christie's inventions and the patents in suit, on the basis that Ball's deposition testimony waived the attorney-client privilege as to these subjects.[47]   Defendants referred to Ball's testimony that he viewed Christie's inventions as "revolutionary."[48]   In answering follow-up questions, Ball stated that his opinion that the inventions were revolutionary indicated that he thought Sprint likely could obtain valid patents over them. Ball also explained very generally why he considered the inventions revolutionary (i.e., they created a VoIP network).   The court found "[t]he testimony TWC points to in this motion to argue that Ball waived confidential information about his conclusion that Christie's inventions were 'revolutionary' cannot be distinguished from the prior statements of Ball and Sprint's outside counsel in the *Vonage* case."[49]   The undersigned held Ball's ultimate conclusions did not reveal the

---

[45] *Id.*

[46] ECF No. 318 at 7.

[47] ECF No. 833.

[48] *Id.* at 13.

[49] *Id.* at 15.

substance of counsel's communications with Sprint and so did not explicitly waive Sprint's attorney-client privilege.[50]

The court finds TWC's statements referencing Block's conclusion that TWC had the right to "Go It Alone" are legally indistinguishable from the conclusions of Ball and Sprint's outside counsel regarding the patentability of Christie's inventions. Additionally, Block's testimony as to how he familiarized himself with the Sprint-TWC relationship cannot be distinguished from the statements and testimony about how Sprint conducted its search for prior art. Accordingly, the court finds TWC, by its reference to Block's deposition testimony at summary judgment, has not disclosed the substance of any privileged communications. Having determined that the statements challenged by Sprint are not privileged, the court will proceed to address whether TWC's use of Block's non-privileged testimony constitutes an affirmative act by which TWC has put its protected information at issue.

### Whether TWC Has Implicitly Waived Privilege

TWC claims that although it moved for summary judgment "without any mention of what Mr. Block believed or of the steps he took to satisfy himself that TWC would be unmolested by Sprint's patents," it was Sprint who injected Block's state of mind into the litigation.[51] First, TWC contends Sprint placed Block's state of mind at issue by claiming in Sprint's motion for summary judgment that TWC could not have reasonably inferred

---

[50] *Id.* at 15–16.

[51] ECF No. 248 at 15.

that Sprint abandoned its patent claim because "'TWC IP Counsel Andy Block … [was] on notice that Sprint had not abandoned any potential claim for infringement' based on a vague email sent by Sprint counsel Harley Ball referencing patents."[52]  Opposing Sprint's summary judgment motion, TWC asserted various arguments as to why "Mr. Ball's brief and non-substantive communication with Mr. Block only reinforces TWC's equitable estoppel defense."[53]  In a footnote, TWC asserted that "Mr. Ball's email must also be viewed with the understanding that, at the time it was sent in June 2010, both Sprint and TWC witnesses, *including Mr. Block*, had already concluded that the 2006 Agreement granted TWC the unfettered right to Go It Alone."[54]  TWC argues it "is not claiming that it relied on the advice of counsel in making any investments or deciding to [Go It Alone], or even that Mr. Block's conclusion was communicated to anyone else at TWC."[55]  TWC claims that it included information about Mr. Block's personal beliefs solely "to refute Sprint's misleading argument that Mr. Block must have known Sprint was going to sue TWC for patent infringement if it went it alone at the time he received Mr. Ball's email in June 2010."[56]  Sprint counters that TWC's "'defensive-purposes-only' theory of selective

---

[52] *Id.* at 8 (quoting ECF No. 161 at 25).

[53] ECF No. 191 at 151.

[54] *Id.* at 153 n. 15 (emphasis added).

[55] ECF No. 248 at 16.

[56] *Id.*

waiver lacks authority and that "[i]t was TWC who promised not to rely on attorney beliefs, not Sprint."[57]

The court declines to find implicit waiver under these circumstances—i.e., where Sprint's summary judgment motion made specific reference to the state of mind of TWC's in-house counsel, and TWC offered, in a footnote in its opposition brief, its counsel's non-privileged legal conclusion to counter Sprint's assertion as to its counsel's understanding.  To be clear, the court, like Sprint, does *not* interpret the "affirmative act" requirement of *Hearn* so narrowly as to preclude a finding of waiver where the party asserting privilege is defending against, rather than moving for, summary judgment. Still, because Sprint's motion for summary judgment made a specific representation as to TWC's counsel's knowledge, the court does not find that TWC, in responding with its counsel's uncommunicated legal conclusion, has placed its privileged communications at issue by its own affirmative act.

Second, TWC contends Sprint placed Block's state of mind at issue by claiming in its brief in opposition to TWC's motion for summary judgment that TWC could not have relied on its belief that Sprint would not sue TWC for patent infringement because "'TWC head patent counsel Andy Block actively monitored Sprint's patent litigation against Vonage,' which shows that Mr. Block 'anticipated, and was preparing for, this very lawsuit.'"[58]  TWC claims that in its reply brief in support of summary judgment, it

---

[57] ECF No. 256 at 2, 11.

[58] ECF No. 248 at 7 (quoting ECF No. 196 at 2, 17).

included "the pertinent information that Sprint intentionally omitted"—specifically, that Block "participated in the joint *Sprint-Vonage* investigation for less than two months because he was not familiar with the TWC-Sprint relationship, but that once he educated himself on that relationship, he realized that TWC was safe from suit by Sprint and so exited the joint investigation."[59] Here again, TWC claims it is "not using this evidence to prove that TWC believed it had the right to [Go It Alone], or that anyone at TWC relied on any advice that Mr. Block gave, but rather to provide the entire context of the *Sprint v. Vonage* investigation to show that Sprint's contention as to why Mr. Block participated in the joint investigation is indisputably wrong and based upon a knowingly incomplete and misleading representation of the factual record."[60]

Sprint argues that to the extent TWC takes issue with Sprint's citation to Block's testimony, TWC "could have responded by relying on non-privileged information (like it originally said it would), by moving to strike, or by even moving for a motion in limine."[61] TWC counters that in offering Block's testimony regarding his participation in the joint Sprint-Vonage investigation in its reply brief in support of summary judgment, TWC indicated that it was "including these additional, non-privileged facts . . . so that the Court will have the complete, non-privileged record with respect to the circumstances

---

[59] *Id.* at 7, 16.

[60] *Id.* at 16–17.

[61] ECF No. 256 at 12–13.

surrounding Mr. Block's brief conversations with outside counsel in 2005 and 2007."[62]

TWC also stated in its reply brief:

> TWC is not citing Mr. Block's testimony . . . to support its equitable estoppel claim, as TWC does not allege that Mr. Block communicated that belief to anyone at TWC, that anyone at TWC relied on Mr. Block's personal belief that TWC did not have an issue with respect to Sprint's patents or that TWC is relying on an advice of counsel defense. Instead, TWC is providing Mr. Block's complete testimony on this issue defensively to refute Sprint's misleading speculation that TWC was "monitoring" Sprint's patents or "preparing for suit" when the complete set of undisputed facts demonstrates that Sprint's assertion is false.[63]

Here too, the court does not find TWC has put its privileged information at issue through its own affirmative act. At Block's deposition, Sprint elicited testimony about "what [Block] did and what [he] concluded" after expressly agreeing that his "answer to [the] question will not waive privilege."[64] The court declines to find waiver based on TWC's reference at summary judgment to Block's responsive testimony for the limited purpose for which it was offered.

Because the court does not find the first two prongs of the *Hearn* test satisfied, the court need not consider the third prong. The court notes, however, that in its opposition to TWC's summary judgment motion, Sprint cites the very testimony with which it now takes issue. Specifically, Sprint's opposition brief argues the fact that Block concluded in 2007 "that the parties' contracts granted TWC the right to practice Sprint's VoIP patents

---

[62] ECF No. 248 (quoting ECF No. 227-1 at Resp. to Sprint Fact ¶ 37.)

[63] *Id.*

[64] *Id.* at 22 (modification added).

without the help of Sprint" supports an inference that "TWC relied on . . . incorrect legal conclusions, rather than Sprint's conduct, and proceeded to do what was economically convenient without regard to any potential patent claim by Sprint."[65]  Under these unique circumstances, the court is not persuaded that denying Sprint access to TWC's privileged communications would be "fundamentally unfair" within the meaning of *Hearn*.  So, the court grants TWC's motion for protective order, and denies Sprint access to TWC's privileged communications.

IT IS SO ORDERED.

Dated December 6, 2016, at Kansas City, Kansas.


 s/ James P. O'Hara
James P. O'Hara
U. S. Magistrate Judge

---

[65] ECF No. 196 at 11.