IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., Plaintiff, | ) | |
| v. | ) | Case No. 11-2686-JWL |
| TIME WARNER CABLE, INC., et al., Defendants. | ) | |

**JURY INSTRUCTIONS**

INSTRUCTION NO. 1

The time has now come for me to explain to you the law that will govern your jury deliberations.

You are duty bound to follow the law as I explain it to you in the instructions that I am about to give you. You as jurors are the sole judges of the facts. This means that you must take the law as I explain it to you and apply the law to the facts revealed by the evidence.

Do not single out any one instruction alone as stating the law. Rather, consider my instructions in their entirety.

Also, do not concern yourselves with the wisdom of the law. Despite any opinion you may have about what the law should be, you would violate your sworn duty if you were to base your verdict upon any view of the law other than that given to you in these instructions.

INSTRUCTION NO. 2

Counsel's statements and arguments are not evidence unless they are admissions or stipulations. When the attorneys for the parties agree that a particular fact exists, that is referred to as a "stipulation", and the jury must accept that stipulation as true.

You may consider as evidence everything that was admitted during trial, such as witness testimony, an item or document marked as an exhibit, or any other matter admitted into evidence such as an admission, agreement, or stipulation. You must entirely disregard any evidence with respect to which I sustained an objection or which I ordered stricken.

You are to consider only the evidence, but you are not limited to considering only the bald statements of witnesses. In other words, you are not limited solely to what you see and hear. You are permitted to draw reasonable inferences based on your experience if reason and common sense lead you to draw particular conclusions from the evidence.

INSTRUCTION NO. 3

You may use the notes taken by you during the trial. Remember, however, that notes are not evidence. If your memory should differ from your notes or the notes of other jurors, then you should rely on your memory.

INSTRUCTION NO. 4

At times during trial I ruled on the attorneys' objections to admitting certain items into evidence. Questions relating to the admissibility of evidence are solely questions of law for me. You must not concern yourselves with the reasons for my rulings, and do not draw any inferences from my rulings. Consider only the evidence admitted.

INSTRUCTION NO. 5

Some evidence is admitted for a limited purpose only. When I have instructed you that particular evidence is admitted for a limited purpose, you must consider that evidence only for that purpose and for no other.

INSTRUCTION NO. 6

Counsel's statements, arguments, and remarks are intended to help you understand the evidence and apply the law, but they are not evidence. You should disregard any such comment that has no basis in the evidence.

INSTRUCTION NO. 7

You must weigh and consider the evidence without favoritism for or prejudice against either party. Do not be influenced by anything not within the issues stated in my instructions. Sympathy should not affect your deliberations.

INSTRUCTION NO. 8

The parties to this lawsuit are corporations. This should make no difference to you. You must decide this case as if it were between individuals. All persons, including corporations, stand equal before the law, and are to be dealt with as equals in a court of justice.

A corporation may act only through people such as its agents or employees. In general, any agents or employees of a corporation may bind the corporation by their acts and by statements made while acting within the scope of their duties as employees of the corporation.

INSTRUCTION NO. 9

Some of the exhibits contain redactions. Portions of those exhibits have been redacted either because I have excluded the redacted portions from the evidence or because the parties have agreed that the redacted portions should not be admitted. You should disregard any redactions just as you would disregard any other evidence that I have excluded from the record.

INSTRUCTION NO. 10

During this trial, evidence was presented to you in the form of video depositions. A deposition is the sworn testimony of a witness taken before trial. Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness testified in court.

INSTRUCTION NO. 11

I have not intended in anything that I have said or done – not in these instructions, in any ruling, or in any action or remark I may have made during trial – to suggest how I would resolve any of the questions entrusted to you, the jury, in this case.

INSTRUCTION NO. 12

I will now review for you the parties in this action and their respective positions that you will have to consider in reaching your verdict.

As you know, this is a patent case. It involves U.S. Patent Numbers 6,343,084; 6,633,561; 6,463,052; 6,473,429; and 6,298,064. Because patents are often referred to by their last three digits, the patents in this case will be referred to as the '084 Patent; the '561 Patent; the '052 Patent; the '429 Patent; and the '064 Patent.

The plaintiff in this case is Sprint Communications Company, L.P., which I will refer to as "Sprint". The defendants are Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment Company, L.P., Time Warner Entertainment-Advance/Newhouse Partnership, TWC Communications, LLC, and Time Warner Cable Information Services (Kansas), LLC. I will refer to defendants collectively as "Time Warner Cable". Sprint contends that Time Warner Cable infringed certain claims of these patents by making, selling, offering to sale, and/or using digital voice telephone services. The following patent claims are at issue in this case:

'084 Patent – Claims 1 and 7;

'561 Patent – Claims 1, 3, 15, 23, 24, 26, and 38;

'052 Patent – Claims 1, 3, 4, and 5;

'429 Patent – Claims 1, 5, and 7; and

'064 Patent – Claims 1, 3, and 26.

Sprint also contends that Time Warner Cable's alleged infringement of the asserted patent claims was willful. Sprint contends that it is entitled to damages caused by infringement in the form of a reasonable royalty based on revenue Time Warner Cable has received from its telephony services.

Time Warner Cable contends that it did not infringe the asserted patent claims and that in any case it did not willfully infringe the asserted patent claims. In addition, Time Warner Cable contends that the asserted patent claims are invalid for a number of reasons, including that the claimed invention was not new and that the claimed invention was not adequately supported by the patent. I will tell you more about the meaning of those defenses shortly. Furthermore, Time Warner Cable disputes Sprint's entitlement to and calculation of a reasonable royalty.

Your job is to decide whether Time Warner Cable has infringed the asserted patent claims and whether any of the asserted patent claims are invalid. If you decide that an asserted patent claim has been infringed and is not invalid, you will then need to decide any reasonable royalty to be awarded to Sprint to compensate it for the infringement. You will also need to make a finding as to whether any infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award that you make. I will take willfulness into account later.

INSTRUCTION NO. 13

Before trial, you saw the video about patents and the patent system. I will now give you more detailed instructions about the patent laws that specifically relate to this case.

A patent owner has the right to exclude others from making, using, offering for sale, or selling the invention covered by its patent claims during the life of the patent. Whoever makes, uses, offers to sell, or sells what is covered by the patent claims without the patent owner's permission is said to "infringe" the patent.

INSTRUCTION NO. 14

The claims of a patent are the numbered sentences at the end of the patent. The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing. Claims may describe products, systems, or methods for making or using a product or system.

The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each claim covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." When a product, process, or system meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product, process, or system where each of the claim elements or limitations is present. If even one element or limitation is not present, then the claim is not infringed.

INSTRUCTION NO. 15

To decide whether or not an accused product, system, or method infringes a patent claim or whether or not a patent claim is valid, the first step is to understand the meaning of the words used in the patent claims.

It is my job as judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patent is infringed, and whether or not it is invalid.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case. I will be giving you a list of the claims of the asserted patents at issue in this case as part of the verdict form when I conclude my instructions.

INSTRUCTION NO. 16

Patent claims may exist in two forms, referred to as independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

The following claims at issue in this lawsuit are independent claims:

’084 Patent – Claim 1;

’561 Patent – Claims 1 and 24;

’052 Patent – Claim 1;

’429 Patent – Claim 1; and

’064 Patent – Claim 1.

A dependent claim does not itself recite all of the requirements of the claim, but refers to another claim for some of its requirements. A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations recited in the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim to which it refers. A system that meets all the requirements of both the dependent claim and the claim to which it refers is covered by that dependent claim.

For example, Claim 7 of the ’084 Patent is a dependent claim. It refers to Claim 1 of the ’084 Patent. To determine what dependent Claim 7 of the ’084 Patent covers, the words of that claim and the words of Claim 1 of the ’084 Patent must be read together.

The following claims at issue in this lawsuit are dependent claims:

'084 Patent – Claim 7;

'561 Patent – Claims 3, 15, 23, 26, and 38;

'052 Patent – Claims 3, 4, and 5;

'429 Patent – Claims 5 and 7; and

'064 Patent – Claims 3 and 26.

INSTRUCTION 17

I have now instructed you as to the types of claims at issue in this case. I will next define the meaning of the words used in the patent claims at issue. You must rely exclusively on the definitions I provide to you in your consideration of infringement and invalidity issues.

You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.

**The '084 Patent**

In the '084 Patent, the following phrases have the following meanings:

(1) "routing" in Claim 1 means *directing through a communication system by a selected route or in a specific direction*;

(2) "interworking unit" in Claim 1 means *ATM interworking multiplexer*;

(3) "identifier" in Claim 1 means *data for routing information in a packet network*; and

(4) "DS0 connection" in Claim 7 means *a channel over which DS0 communication signals (a term of art meaning Digital Signal Level 0) are transmitted or received.*

**The '561 Patent**

In the '561 Patent, the following phrases have the following meanings:

(1) "route" in Claims 1 and 24 means *direct through a communication system by a selected route or in a specific direction*;

(2) "signaling message" in Claims 1 and 24 means *a message used to set up or tear down a call*;

(3) "generating a . . . message" in Claims 1 and 24 means *assembling information to create a message*;

(4) "processing . . . to select" in Claim 1 means *processing . . . to participate in the selecting*;

(5) "a network code that identifies a network element to provide egress from the packet communication system for the user communication" in Claim 1 means *a code identifying a network element which network element provides an exit from a packet communication system*;

(6) "communication switches" in Claims 23 and 38 means *devices that set up calls and relay voice and/or data information from one connection to another*; and

(7) "a network code that identifies a network element to provide egress for the user communication from the packet communication system" in Claim 24 means *a code identifying a network element which network element provides an exit from a packet communication system*.

**The '052 Patent**

In the '052 Patent, the following phrases have the following meanings:

(1) "processing . . . to select" in Claim 1 means *processing . . . to participate in the selecting*;

(2) "a network code that identifies a network element to provide egress for the user communication from the packet communication system" in Claim 1 means *a code identifying a network element which network element provides an exit from a packet communication system*; and

(3) "DS0 connection" in Claim 3 means *a channel over which DS0 communication signals (a term of art meaning Digital Signal Level 0) are transmitted or received.*

**The '429 Patent**

In the '429 Patent, the following phrases have the following meanings:

(1) "processing . . . to select" in Claim 1 means *processing . . . to participate in the selecting*;

(2) "interworking unit" in Claim 1 means *ATM interworking multiplexer*;

(3) "identifier" in Claim 1 means *data for routing information in a packet network*;

(4) "generating a . . . message" in Claim 1 means *assembling information to create a message*;

(5) "DS0 connection" in Claim 1 means *a channel over which DS0 communication signals (a term of art meaning Digital Signal Level 0) are transmitted or received*; and

(6) "telecommunication switches" in Claim 5 means *devices that set up calls and relay voice and/or data information from once connection to another.*

**The '064 Patent**

In the '064 Patent, the following phrases have the following meanings:

(1) "processing . . . to select" in Claim 1 means *processing . . . to participate in the selecting*;

(2) "interworking unit" in Claim 1 means *ATM interworking multiplexer*;

(3) "generating a . . . message" in Claim 1 means *assembling information to create a message*; and

(4) "DS0 connection" in Claim 1 means *a channel over which DS0 communication signals (a term of art meaning Digital Signal Level 0) are transmitted or received.*

INSTRUCTION NO. 18

In this case, there are two types of infringement you must consider: (1) "literal infringement" and (2) "infringement under the doctrine of equivalents."

In order to prove infringement by literal infringement, Sprint must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Time Warner Cable made, used, sold, offered for sale within the United States, or imported into the United States, a product, system, or method that meets all of the requirements of a claim and did so without the permission of Sprint during the time the asserted patents were in force. You must compare the system with each and every one of the limitations of a claim to determine whether all of the limitations of that claim are met. For literal infringement, a claim's limitation is only met if it is performed by the accused system exactly as it is recited in the claim. If the accused system omits even a single limitation recited in an asserted claim, then you must find that Time Warner Cable has not infringed that particular claim.

INSTRUCTION NO. 19

If a company makes, uses, sells, offers to sell within the United States, or imports into the United States, a product, system, or method that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be infringement if that product, system, or method satisfies that claim "under the doctrine of equivalents."

Sprint relies on the doctrine of equivalents with respect to one element—the "interworking unit"—found in Claim 1 of the '084 Patent, Claim 1 of the '429 Patent, and Claim 1 of the '064 Patent.

Under the doctrine of equivalents, an accused product, system, or method infringes a patent claim if the product, system, or method contains elements or performs steps corresponding to each and every requirement of the claim, and each requirement is equivalent to (even though not literally met by) the accused product, system, or method. You may find that an element or step is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure or action: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement of the claim.

The known interchangeability of substitutes for an element of a patent claim also is a factor that bears upon whether an accused structure or action is substantially the same as

the claimed structure or action. In order for the structure or action to be considered interchangeable, the structure or action must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. The proper time for evaluating equivalency—and thus for evaluating knowledge of interchangeability between elements—is at the time of infringement, not at the time the patent was issued or some other time.

In order to prove infringement by "equivalents," Sprint must prove the equivalency of the structure or actions to a claim element by a preponderance of the evidence.

INSTRUCTION NO. 20

The beginning portion, or preamble, of the claims of the asserted patents uses the word "comprising". "Comprising" has a special meaning in patent law, and it means "including" or "containing". A claim that uses the word "comprising" or "comprises" is not limited to products, systems, or methods having only the limitations that are recited in the claim, but also covers products, systems, or methods that add additional elements or steps.

All of the asserted claims in this case use the "comprising" language. Thus, if you find that the accused product, system, or method contains each limitation of an asserted claim, then that claim is infringed even if the accused product, system, or method contains additional features not found in the claim.

INSTRUCTION NO. 21

In order to prove infringement, Sprint need not show that Time Warner Cable knew that it was infringing a patent. A party may be found to have infringed a patent even if that party believed in good faith that it was not infringing any patent, and even if that party did not know of the patent. A party may also be found to have infringed a patent even if that party believed in good faith that the patent was invalid.

In addition, the fact that Time Warner Cable may have purchased components for its system from other companies does not mean that its system does not infringe the asserted patent claims. Similarly, the fact that another company may have independently developed the technology used in the accused system does not mean that the accused system does not infringe the asserted patent claims. Moreover, even if Time Warner Cable's accused products, systems, and methods represented an improvement of the inventions described in the asserted patent claims, that fact does not mean that the accused system does not infringe the asserted patent claims. The test for infringement remains the same regardless of where Time Warner Cable obtained the components for its products or systems and regardless of whether Time Warner Cable improved on the patented invention.

INSTRUCTION NO. 22

Taking each of the asserted claims of the asserted patents separately, if you find that Sprint has proved by the preponderance of the evidence that each and every limitation of the claim is present, either literally or under the doctrine of equivalents, in the accused product, system, or method, then you must find that Time Warner Cable infringes that claim.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed, and that infringement is assessed on a claim-by-claim basis. You must compare the asserted patent claims to the accused system to determine whether or not there is infringement. The accused system should be compared only to the invention set forth in the patent claims.

You must determine, separately for each asserted claim, whether or not there is infringement, based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties. There is one exception to this rule. My instructions on infringement so far have related to independent claims. As I told you, the asserted patents also contain dependent claims. A dependent claim includes each of the limitations of the independent claim to which it refers, plus the additional elements listed in the dependent claim itself.

If you find that a claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been

infringed, you must still decide, separately, whether the accused system meets additional limitations of any claims that depend from the independent claim, thus, whether those claims have also been infringed. A dependent claim includes all the limitations of any of the claims to which it refers, plus additional requirements of its own.

INSTRUCTION NO. 23

In this case, Sprint argues both that Time Warner Cable infringed and, further, that Time Warner Cable infringed willfully. If you decide that Time Warner Cable has infringed, you must then address the additional issue of whether or not this infringement was willful.

In order to prove willful infringement, Sprint must prove, by a preponderance of the evidence, that Time Warner Cable knew or believed, or it was so obvious that it should have known, that there was a high likelihood that it was infringing a valid patent. In making that determination, you should consider all facts relating to Time Warner Cable's knowledge at the time it performed acts of infringement.

With respect to this question of willfulness, you are instructed that, under the law, Time Warner Cable had no duty to obtain any opinions of counsel.

This issue of willfulness is not relevant to your initial determination of whether Sprint has shown infringement. Rather, your determination on the issue of willfulness will be used by the Court in making other rulings.

INSTRUCTION NO. 24

Up until now, my instructions have focused on the law you must apply to determine whether Time Warner Cable has infringed the asserted patent claims. We now turn to the next major issue in the case, which is the validity of the asserted patent claims. Time Warner Cable contends that the patent claims are invalid for three reasons.

First, Time Warner Cable contends that the patents do not satisfy the "written description" requirement. The invention claimed in a patent must be adequately described. In return for the right to exclude others from making, using, selling, or offering for sale the claimed invention, the patent owner must provide the public with a complete description in the patent of the invention.

Second, Time Warner Cable contends that the claimed inventions are not new and thus that the patent claims are invalid as "anticipated". For a patent claim to be valid, the invention claimed in the patent must be new. A patent cannot legally take away the right to use an identical combination of parts or elements which was already known before the invention was made.

Third, Time Warner Cable contends that the patent clams are invalid as "obvious".

Because each claim of the asserted patents is presumed to be valid, Time Warner Cable must prove that a patent claim is invalid by clear and convincing evidence.

INSTRUCTION NO. 25

Time Warner Cable contends that the patents at issue in this case are invalid because they do not satisfy the written description requirement. A patent must contain a written description of the system or method claimed in the patent. In order to satisfy the written description requirement, the patent specification must describe each and every limitation of a patent claim, although the exact words found in the claim need not be used.

The written description requirement is satisfied if a person of ordinary skill in the field, reading the patent application as originally filed, would recognize that the patent application described the invention as finally claimed in the patent.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application. The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application. The specification need not describe in detail all possible examples to satisfy the written description requirement.

Time Warner Cable contends that each of the asserted patent claims is invalid for lack of an adequate written description of the claimed invention. If you find that Time Warner Cable has proved by clear and convincing evidence that the asserted patent does

not contain a written description of the invention covered by a particular claim, then you must find that claim to be invalid.

INSTRUCTION NO. 26

For its second invalidity contention, Time Warner Cable contends that the patented inventions were not new and thus that the asserted patent clams are invalid as anticipated. That contention requires an understanding of the term "prior art".

Prior art includes references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention. For the purpose of this case, to be prior art, the reference must have been published or patented before the date of the claimed invention, which here is deemed to be the date of the filing of the particular Sprint patent at issue.

For a patent claim to be invalid because it is not new (and thus is anticipated), Time Warner Cable must show by clear and convincing evidence that all of the requirements of that claim were described in a single previous printed publication or patent. We call such things "anticipating prior art." I will instruct you further in the following instructions concerning the particular prior art asserted by Time Warner Cable in this case.

To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed in a single, previous printed publication or patent, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that single reference, that person could make and use the claimed invention.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. Something is "inherent" in an item of prior art if it is necessarily present in that piece of prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case. It is not required, however, that persons of ordinary skill actually recognize or appreciate the inherent disclosure at the time the prior art was first known. Thus, the prior use of the patented invention that was unrecognized and unappreciated can still be an invalidating anticipation, provided the allegedly inherent feature was necessarily present in the reference. If Time Warner Cable asserts inherency, it must prove that by clear and convincing evidence.

In addition, additional references may be considered when they are used to explain, but not expand, the meaning of a particular prior art reference. Thus, although references cannot be combined for purposes of anticipation, additional references may be used to interpret the allegedly anticipating reference and shed light on what it would have meant to those skilled in the art at the time of the invention. However, such evidence must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill.

INSTRUCTION NO. 27

In order for someone to be entitled to a patent, the invention must actually be "new" and not be anticipated. In general, inventions are new when the identical product or process has not been made, used, or disclosed before. Anticipation must be determined on a claim-by-claim basis.

Time Warner Cable contends that certain of the asserted claims are invalid because the claimed inventions are anticipated by prior art, namely, Larry Schessel's European patent application. Time Warner Cable must convince you of this by clear and convincing evidence, that is, that the evidence highly probably demonstrates that the claim or claims are invalid.

To show that a Sprint patent claim is anticipated, Time Warner Cable must show that that invention was patented or described in a printed publication in this or a foreign country, before the filing date of the patent for that claim. An invention is considered to have been patented by another if, to a person having ordinary skill in the technology, the other patent describes the same invention claimed by Sprint. A description is considered a "printed publication" only if it was publicly accessible.

INSTRUCTION NO. 28

For its third invalidity contention, Time Warner Cable contends that the asserted patent claims are invalid as obvious.

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Time Warner Cable may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of telephony systems. Obviousness may be shown by considering more than one item of prior art. In this case, Time Warner Cable asserts that the asserted claims of Sprint's patents are obvious in light of two pieces of prior art: Larry Schessel's European patent application and the 1991 Telcom Report.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of telephony systems that someone would have had at the time the invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may

but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of telephony systems to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known functions; (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces. To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, that is, consider only what was known at the time of the invention.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on the obviousness or not of the claimed invention, such as:

a. Whether the invention was commercially successful as a result of the merits

of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b. Whether the invention satisfied a long-felt need;

c. Whether others had tried and failed to make the invention;

d. Whether others invented the invention at roughly the same time;

e. Whether others copied the invention;

f. Whether there were changes or related technologies or market needs contemporaneous with the invention;

g. Whether the invention achieved unexpected results;

h. Whether others in the field praised the invention;

i. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

j. Whether others sought or obtained rights to the patent from the patent holder; and

k. Whether the inventor proceeded contrary to accepted wisdom in the field.

In deciding what the level of ordinary skill in the field of telephony systems is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

INSTRUCTION NO. 29

Where the party challenging the validity of the patent is relying on prior art that was not considered by the United States Patent and Trademark Office (PTO) during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide that the prior art was different and more relevant than the information considered by the PTO, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

INSTRUCTION NO. 30

You must evaluate the invalidity of each asserted claim separately. Even if an independent claim is invalid as anticipated or obvious, this does not mean that the dependent claims that depend from it are automatically invalid for that reason. Rather, you must consider the validity of each claim, separately. You must decide this issue of validity on a claim-by-claim basis. However, if you find that a dependent claim is invalid as anticipated or obvious, then you must find that the independent claim is also invalid for that same reason.

INSTRUCTION NO. 31

I have now instructed you as to the law governing Sprint's infringement contentions and Time Warner Cable's invalidity contentions. If you find that the accused system infringes any valid patent claim, you must determine the amount of damages to be awarded to Sprint for infringement. If you find that Time Warner Cable has not infringed any valid claim of the patents, then Sprint is not entitled to any damages, and you should not make any findings about damages.

The damages you award must be adequate to compensate Sprint for Time Warner Cable's infringement. Such damages are not meant to punish the infringer. You must be careful to ensure that the damages award is no more or no less than the value of the patented invention.

Sprint has the burden of proving damages by a preponderance of the evidence. In other words, you should award only those damages that Sprint establishes that it more likely than not suffered. While Sprint is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

INSTRUCTION NO. 32

If you find that Sprint has established infringement of any valid claim, Sprint is entitled to at least a reasonable royalty to compensate it for that infringement. I will now discuss the meaning of "reasonable royalty" in greater detail.

A royalty is a payment made to a patent holder (in this case, Sprint) in exchange for rights to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer (in this case, Time Warner Cable) would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringing use first began. In considering this hypothetical negotiation, you should focus on what the expectations of Sprint and Time Warner Cable would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the asserted patents were valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

The reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing products have both patented and unpatented features, measuring this value requires a determination of the

value added by the patented features.

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of non-infringing alternatives to the patented invention. A non-infringing alternative must be an acceptable product that is licensed under the patent or that does not infringe the patent.

I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1. Whether Sprint had established a royalty for the asserted patents, for example by granting other licenses to the asserted patents.

2. Royalties or rates paid by Time Warner Cable or others for the use of other patents comparable to the asserted patents.

3. The nature and the scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

4. Whether Sprint had an established policy of licensing or not licensing the asserted patents.

5. The commercial relationship between Sprint and Time Warner Cable, such as whether they are competitors.

6. Whether being able to use the patented invention helps in making sales of

other products or services.

7. The duration of the asserted patents and the term of the license.

8. The profitability of the product made using the patent, and whether or not that product is commercially successful or popular.

9. The advantages and benefits of using the patented invention over products or methods not claimed in the asserted patents.

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Sprint, and the benefits to those who have used the invention.

11. The extent to which Time Warner Cable has made use of the invention and the value of that use to Time Warner Cable.

12. Whether there is a portion of the profit or selling price that is customarily paid for use of the patented invention or comparable inventions.

13. The portion of profits due to the patented invention, as distinguished from the portion due to other factors, such as unpatented elements, manufacturing processes, business risks, or significant features or improvements added by Time Warner Cable.

14. Expert testimony concerning a reasonable royalty.

15. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating a license for use of the asserted patents.

Finally, even though the relevant date for the hypothetical license negotiation is

just before the infringement began, evidence relating to events after that time may be relevant and inform your determination of the result of that hypothetical negotiation, including with respect to the listed factors.

INSTRUCTION NO. 33

You should not consider the fact that I have instructed you about the proper measure of damages as an indication of my views regarding whether either party is entitled to your verdict in this case. I am giving you instructions about damages solely to provide you with guidance if you should find in favor of Sprint on its infringement contentions.

INSTRUCTION NO. 34

You have heard evidence concerning the verdict rendered in 2007 in Sprint's lawsuit against Vonage. You may consider that verdict only for the limited purposes of (1) evaluating the testimony of Dr. Rao, who relied on that verdict in formulating his reasonable royalty opinions; and (2) determining Time Warner Cable's knowledge and belief as they relate to the issue of willfulness. Thus, you should not consider that verdict in deciding the issues of infringement or invalidity of the patents.

You have also heard evidence concerning the 2003 and 2006 agreements between Sprint and Time Warner Cable. You may consider those agreements for the purpose of determining whether or not any infringement by Time Warner Cable was willful (assuming you first find infringement) and in connection with the parties' commercial relationship. Thus, you should not consider those agreements in deciding the issues of infringement or invalidity of the patents.

INSTRUCTION NO. 35

You are to determine the weight and credit to give each witness's testimony. You have a right to use common knowledge and experience in evaluating witnesses' testimony.

INSTRUCTION NO. 36

A witness's credibility may be attacked by evidence that on some former occasion he or she made a statement, acted in a manner, or gave deposition testimony that was inconsistent with his or her testimony in this case.

You may consider such evidence only insofar as it may impact the witness's credibility – that is, only in deciding the weight and credit to be given to that witness's testimony.

INSTRUCTION NO. 37

Certain testimony has been given in this case by experts – that is, by persons who are specially qualified by experience or training and possess knowledge on matters not common to mankind in general. The law permits such persons to give their opinions regarding such matters, although you are not required to accept such opinions. The testimony of experts is to be considered like any other testimony and is to be tried by the same tests, and should receive such weight and credit as you deem it entitled to, when viewed in connection with all the other facts and circumstances, and its weight and value are questions for you.

INSTRUCTION NO. 38

Burden of proof means burden of persuasion. In a patent case such as this, there are two different standards for the burdens of proof.

One standard is called "preponderance of the evidence". This standard of proof requires that, in order for a party to satisfy its burden of proof, you must be persuaded that the party's assertion is more probably true than not true.

The second standard of proof is a higher one. It is called "clear and convincing evidence". Clear and convincing evidence is evidence that produces in your mind a clear and abiding conviction that the truth of a contention is highly probable.

You must decide essentially four main issues in this case. The burden of proof on those issues is as follows:

(1) *Infringement*. Sprint has the burden of proving that Time Warner Cable's accused products, systems, and methods infringed the asserted patent claims. Sprint must prove these claims by a preponderance of the evidence.

(2) *Invalidity*. Time Warner Cable has the burden of proving that the asserted patent claims are invalid. Time Warner Cable must prove its assertions of invalidity by clear and convincing evidence.

(3) *Damages*. Sprint has the burden of proving damages by a preponderance of the evidence. If you find that Sprint has met its burden of proof on the issue of infringement for any one of the asserted patent claims, and you also find that Time Warner Cable has not met its burden of proof on the issue of invalidity as to that

particular claim, you must then determine the amount, if any, to which Sprint has proven it is entitled, by a preponderance of the evidence, as damages to compensate for the infringement.

(4) *Willfulness.* If you find that Sprint has met its burden of proof on the issue of infringement for any one of the asserted patent claims, and you also find that Time Warner Cable has not met its burden of proof on the issue of invalidity as to that particular claim, you must then determine whether Sprint has proven, by a preponderance of the evidence, that Time Warner Cable's infringement was willful.

In determining whether a party has met its burden of proof, consider all of the evidence, whether produced by Sprint or by Time Warner Cable. The weight of the evidence on any issue is not determined by the number of witnesses, but rather by how reasonable, persuasive, and satisfying the evidence is to you.

INSTRUCTION NO. 39

There are two types of evidence. One is direct evidence, such as the testimony of someone who claims to have seen or heard an event. The other is circumstantial evidence, such as evidence from which you can reasonably draw inferences about whether an event did or did not occur.

The law does not distinguish between direct and circumstantial evidence, but rather simply requires the jury to find the facts in accordance with appropriate burden of proof based on all the evidence in the case, both direct and circumstantial.

INSTRUCTION NO. 40

You are the exclusive judges of the facts proved, the weight of the evidence, and the credibility of the witnesses. In determining the issues in this case you will, of course, rely upon the evidence you heard in the courtroom and will not be swayed by sympathy, passion, or prejudice. You may and should, however, rely on the general information you possess as to matters of common knowledge, observation, and life experience. In weighing the testimony of witnesses, you may consider their appearance, demeanor, means of knowledge, apparent intelligence or ignorance, whether or not they have an interest in the outcome of the case, and all other facts and circumstances evident at trial that will help you determine the truth.

If you believe that any witness testified falsely about any material fact, you may disregard all or any part of his or her testimony, but you are not required to believe or disbelieve the testimony of any witness. You should reconcile any conflicting testimony as truthful if reasonably possible, but if doing so is not possible then use your best judgment in determining what testimony to believe.

When weighing conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. You should keep in mind that making an innocent mistake in memory – like being unable to remember – is not uncommon.

INSTRUCTION NO. 41

Your verdict must represent the considered judgment of each juror. In order to return a verdict, each juror must agree upon the verdict and your verdict must be unanimous.

If you do not reach a verdict, the parties may be put to the expense of another trial and will once again have to endure the mental and emotional strain of a trial. If the case is retried, a future jury must be selected in the same manner and from the same source as you have been chosen, and there is no reason to believe that the case would ever be submitted to a more competent jury. There is no reason to believe that there will be more or clearer evidence produced at a future trial.

As jurors you have a duty to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after considering the evidence impartially with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if you become convinced that it is wrong. But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges – judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

INSTRUCTION NO. 42

There is a copy of the Verdict Form attached to your copy of these instructions. You will receive the original of this Verdict Form along with the official set of Jury Instructions signed by me when you begin your deliberations. Counsel may refer to the Verdict Form during their closing arguments, and you may use your copies to follow the arguments or to make notes.

I am not going to read the Verdict Form to you. However, by way of explanation, the Verdict Form asks you to answer questions concerning infringement and invalidity for each claim of each patent at issue in this case. If you find, with respect to any of those claims, that Time Warner Cable infringed and that the claim is not invalid, then the Verdict Form asks you to answer questions concerning damages and willfulness.

Each question must be answered in accordance with the burden of proof specified in that question. Each answer must be agreed by you unanimously.

INSTRUCTION NO. 43

In considering the evidence in this case, you should use your good sense, consider the evidence only for those purposes for which it was admitted, and give the evidence a reasonable and fair construction in light of your common knowledge of the natural tendencies and inclinations of human beings.

You are to perform your duty without bias as to any party or person. The law does not permit jurors to be governed by sympathy, prejudice, or public opinion.

INSTRUCTION NO. 44

When you retire to the jury room, you should first select one of you as the foreperson to preside over your deliberations, speak for the jury when in court, and sign the verdict.

Your verdict must be founded entirely upon the evidence admitted and the law that I have given to you in these instructions.

Your verdict must be unanimous. Once you reach a unanimous verdict, the foreperson should fill in, date, and sign the verdict form. The foreperson should then notify the bailiff, and your deliberations will be complete. The foreperson will carry the completed verdict into the courtroom and, after we have returned to the courtroom, hand it to the clerk when instructed to do so.

INSTRUCTION NO. 45

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, Blackberry, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, LinkedIn, YouTube, Instagram, or Twitter, to communicate to anyone (or the public at large) any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations. You must inform the Court immediately if you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the Internet or available through social media might be wrong, incomplete, or inaccurate. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom; if you were so influenced, your decision might be based on information known only by you and not your fellow jurors or the parties in the case, and that would unfairly and adversely impact the judicial process.

INSTRUCTION NO. 46

If it becomes necessary during your deliberations to communicate with me, please do so by giving a note to the bailiff who, in turn, will pass the note along to me. The note must be signed by your foreperson or by one or more of you. None of you should ever attempt to communicate with me about the merits of the case in any way other than by a signed writing. I will not communicate with any of you on any subject involving the merits of the case other than in writing, or orally here in open court.

You will note from the oath about to be taken by the bailiffs that they and all other persons are forbidden from communicating with any of you about any subject involving the merits of the case.

Bear in mind also that you are never to reveal to any person how the jury stands numerically or otherwise on the questions before you until after you have reached a unanimous verdict.

1 March 2017
Date

John W. Lungstrum
John W. Lungstrum
United States District Judge