IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 11-2686-JWL |
| TIME WARNER CABLE, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## **MEMORANDUM AND ORDER**

This patent infringement case was tried to a jury in this Court from February 13, 2017, through March 3, 2017.  In its verdict, the jury found the following:  that Time Warner Cable[1] infringed each of the asserted claims of the five Sprint patents at issue; that none of those claims is invalid; that Sprint proved reasonable royalty damages in the amount of $139,800,000; and that Time Warner Cable's infringement was willful.

The Court now considers Time Warner Cable's equitable defenses, which were tried to the Court.  In deciding those issues, the Court has considered the evidence presented in the jury trial as well as additional evidence submitted by the parties to the Court.  In addition, the parties submitted proposed findings and conclusions, and the Court heard oral argument on the equitable defenses on March 2, 2017.  This

---

[1]The Court refers to plaintiff as "Sprint" and to defendants collectively as "Time Warner Cable."

Memorandum and Order constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).  Based on the evidence and arguments presented, and as more fully set forth below, the Court finds that Time Warner Cable has failed to sustain its burden of proof on any of its equitable defenses.  The Court therefore awards Sprint judgment on these defenses and on its claims of patent infringement.[2]

The Court also addresses Sprint's claim for enhanced damages pursuant to 35 U.S.C. § 284.  For the reasons set forth below, the Court denies the claim for enhanced damages, on which claim Time Warner Cable is awarded judgment.

## I.    **Time Warner Cable's Motions to Strike**

By multiple motions (Doc. ## 381, 438, 443), Time Warner Cable requests that the Court strike certain evidence and related argument concerning Time Warner Cable's equitable defenses, on the basis that those exhibits and deposition excerpts were not designated for trial by Sprint or were already excluded by the Court.  The Court grants the motions in part.  First, the Court rejects Sprint's argument that it may rely on evidence that was submitted to the Court at the summary judgment stage.  Although such material may be part of the record of the case for purposes of any appeal, the Court's procedures required Sprint to list any witnesses and exhibits to be used at trial (including

---

[2]In light of these findings, the Court denies Time Warner Cable's motion for judgment as a matter of law on these defenses pursuant to Fed. R. Civ. P. 50 (Doc. # 431) and Sprint's motion for judgment on these defenses at the close of Time Warner Cable's case pursuant to Fed. R. Civ. P. 52(c) (Doc. # 436).

the trial to the Court of the equitable defenses) and to designate any deposition testimony that would be used. Thus, the Court will not consider any cited evidence that was not properly designated for trial. Similarly, any exhibits for which Sprint has not designated sufficient foundational testimony will not be considered; just as at the summary judgment stage, a party may not simply rely on a document without the proper foundation and authentication.

Time Warner Cable also argues that some cited testimony was already excluded by the Court in its rulings on deposition designations. The Court agrees with Sprint, however, that such exclusions may have been intended to apply only with respect to issues tried to the jury. Thus, the Court will consider each such objection separately. If the Court does not refer in this order to a particular item of evidence to which Time Warner Cable has objected, it may be assumed that the Court did not consider it.

## II.   <u>Equitable Estoppel</u>

Time Warner Cable asserts the affirmative defense of equitable estoppel. A patent infringement suit may be barred if the following three elements are established by the defendant:

> (1) the patentee, through misleading conduct (or silence), leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relies on that conduct; and (3) the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.

*See High Point SARL v. Sprint Nextel Corp.*, 817 F.3d 1325, 1330 (Fed. Cir. 2016)

3

(quoting *Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1130 (Fed. Cir. 2013)).  The alleged

infringer bears the burden of proof on this defense.  *See SCA Hygiene Prods. Aktiebolag*

*v. First Quality Baby Prods., LLC*, 767 F.3d 1339, 1343 (Fed. Cir. 2014) (alleged

infringer must prove elements by a preponderance of the evidence), *aff'd after reh'g en*

*banc*, 807 F.3d 1311 (Fed. Cir. 2015) (adopting reasoning of panel concerning equitable

estoppel), *cert. granted*, 136 S. Ct. 1824 (2016) (on issue relating to defense of laches).

"[E]quitable estoppel is not limited to a particular factual situation nor subject to

resolution by simple or hard and fast rules."  *See A.C. Aukerman Co. v. R.L. Chaides*

*Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992) (*en banc*).

The elements of equitable estoppel present questions of fact.  *See SCA Hygiene*,

767 F.3d at 1344.  The Court finds as matters of fact that Time Warner Cable failed to

prove satisfaction of *any* of the elements of equitable estoppel.

A.    <u>Misleading Conduct</u>

With respect to the first element, Time Warner Cable was required to show that

Sprint engaged in misleading conduct from which it reasonably inferred that Sprint did

not intend to enforce its patents against them.  The Federal Circuit discussed this element

as follows in *Aukerman*:

> The first element of equitable estoppel concerns the statements or
> conduct of the patentee which must communicate something in a
> misleading way.  The "something" with which this case, as well as the vast
> majority of equitable estoppel cases in the patent field[,] is concerned[] is
> that the accused infringer will not be disturbed by the plaintiff patentee in
> the activities in which the former is currently engaged.  The patentee's
> conduct must have supported an inference that the patentee did not intend

4

> to press an infringement claim against the alleged infringer.  It is clear, thus, that for equitable estoppel the alleged infringer cannot be unaware—as is possible under laches—of the patentee and/or its patent. The alleged infringer also must know or reasonably be able to infer that the patentee has known of the former's activities for some time.  In the most common situation, the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years.  . . . Judge Learned Hand noted that estoppel was regularly based on no further assurance that a known competitor would not be sued than the patentee's long inaction.  There is ample subsequent precedent that equitable estoppel may arise where, coupled with other factors, a patentee's "misleading conduct" is essentially misleading *inaction*. However, plaintiff's inaction must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendants is abandoned.

*See Aukerman*, 960 F.2d at 1042 (footnote, citations, and internal quotations omitted). "[S]ilence alone will not create an estoppel unless there was a clear duty to speak, or somehow the patentee's continued silence reenforces the defendant's inference from the plaintiff's known acquiescence that the defendant will be unmolested."  *See id.* at 1043-44 (citation omitted).  "If the record indicates silence alone, mere silence must be accompanied by some *other* factor which indicates that the silence was sufficiently misleading as to amount to bad faith."  *See High Point*, 817 F.3d at 1330 (internal quotations omitted) (quoting *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1295 (Fed. Cir. 1992)).

In *SCA Hygiene*, in which the Federal Circuit reversed a summary judgment of equitable estoppel in favor of the defendant, the court discussed and distinguished two of its prior patent cases in which equitable estoppel had been found.  *See id.* at 1349-50 (citing *Scholle Corp. v. Blackhawk Molding Co.*, 133 F.3d 1469 (Fed. Cir. 1998), and

*Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305 (Fed. Cir. 2010)).  The court noted that in *Scholle*, the patentee did not respond to direct requests for an opinion on the product, and the parties had discussed the particular patents; and that in *Aspex*, the parties had been involved in a related patent litigation, the patentee threatened to enforce its patent rights under four patents after the accused infringer began marketing a redesigned product, the accused sought specific infringement contentions, and the patentee responded only concerning two of the four patents.  *See id.*  The Federal Circuit then distinguished the prior cases by noting that the interactions between the parties in its case were "meager" compared to those in the prior cases, being limited to six terse letters; that the accused infringer had not solicited comment from the patentee (which made it less likely that a reasonable factfinder would infer that the subsequent silence misled the accused infringer); that the parties had not engaged in serious discussions involving the products or the patent at issue or any related patent; and that the parties had not been adversaries in prior related litigation or had any other close relationship.  *See id.* at 1350.

In this case, Time Warner Cable essentially relies on Sprint's silence—Sprint's failure to state that it planned to enforce its patents against Time Warner Cable—in arguing for equitable estoppel.  As noted above, silence may create estoppel if there was a "clear duty to speak."  *See Aukerman*, 960 F.2d at 1043-44.  Time Warner Cable argues that a duty to speak arose because a confidential relationship existed between the parties

and because Sprint had superior knowledge about its patents.[3]  The Court rejects these arguments, as it finds that both parties were knowledgeable and experienced enterprises engaged in arm's-length transactions.  The fact and pertinence of Sprint's patents were well known to Time Warner Cable as far back as the *Vonage* trial in 2007.  Had it been inclined to do so, Time Warner Cable could easily have understood Sprint's posture.

The Court also rejects Time Warner Cable's argument that Sprint had a duty to correct "half-truths" about its likely enforcement of the patent.  Time Warner Cable contends that Sprint misled Time Warner Cable by its performance of the 2003 and 2006 contracts, which made clear that Sprint was not Time Warner Cable's exclusive provider and which required Sprint to provide services to aid Time Warner Cable's transition in the event that it chose to Go-It-Alone without Sprint.  Time Warner Cable argues that those contractual provisions and Sprint's understanding that Time Warner Cable did intend eventually to Go-It-Alone provide the additional circumstances required to make Sprint's silence misleading.  As the Court noted at the summary judgment stage in rejecting Time Warner Cable's express and implied license defenses as a matter of law, however, the contractual provisions do not authorize Time Warner Cable to Go-It-Alone

---

[3]Time Warner Cable asserts that a duty to speak arose under New York law, which should govern because of the choice-of-law provision in the parties' contracts. First, it is not clear that the contractual choice-of-law provision would govern this issue not bearing directly on the contracts, although New York law is not materially different from other states' law on this point.  More importantly, Time Warner Cable has not provided authority that would sanction reliance on state law on this issue, and the Federal Circuit has enunciated its own standards for this inquiry.  Nevertheless, under either federal or state law, the Court finds that no clear duty to speak arose here.

without any objection from Sprint, or otherwise indicate that Time Warner Cable may practice Sprint's patents. *See Sprint Communications Co. L.P. v. Comcast Cable Communications LLC*, 2016 WL 7052055, at *20-22 (D. Kan. Dec. 5, 2016) (Lungstrum, J.). Moreover, as Sprint notes, the contracts expressly provided that no intellectual property rights were being given to Time Warner Cable, a provision specifically addressed by the parties in negotiating the 2003 contract. Thus, the Court finds that although Time Warner Cable may have believed that those contracts protected it, any belief based on the contracts that Sprint would not enforce its patents against it was not reasonable, and Sprint's silence was not misleading.

In addition, Time Warner Cable has not shown that Sprint ever indicated to it, by any reference to the patents, that Sprint would never enforce those patents against Time Warner Cable. After the *Vonage* verdict in Sprint's favor in 2007, Sprint employee Jim Patterson contacted Time Warner Cable employee Gerry Campbell to inform him of the verdict. Mr. Patterson testified that in that conversation, he told Mr. Campbell that the *Vonage* verdict would not affect Time Warner Cable because that company was Sprint's customer. Time Warner Cable argues that because it remained a customer of Sprint's throughout the transition of services away from Sprint in the Go-It-Alone rollout, it reasonably believed that Sprint would not enforce its patents throughout that rollout, until March 2014 at least. The Court does not agree and finds to the contrary. In 2009, Time Warner Cable informed Sprint that it would begin its Go-It-Alone program the following year without Sprint as a partner. Sprint was contractually obligated to provide

transition services, and Time Warner Cable transitioned away from Sprint on a gradual basis, but for all intents and purposes, the parties' relationship was severed on a going-forward basis in 2010. Mr. Patterson's statements to Mr. Campbell did not give rise to a reasonable belief by Time Warner Cable that Sprint would still forego enforcement of its patents even after that decision to proceed without Sprint, especially after the e-mail exchanges between patent counsel for the parties in 2010.

In addition, Sprint's patents were discussed during the parties' relationship. Sprint's employee Andrew Greig testified credibly that Sprint's patents were discussed at the time of the negotiation of the 2003 agreement, and the parties then agreed in the contract that no patent rights would be transferred and no license would be granted. After the *Vonage* verdict, Sprint sent Time Warner Cable its notice to various companies that Sprint intended to enforce its patent rights. Dan Hesse, Sprint's CEO, testified that he discussed the existence of open patent issues with his counterpart at Time Warner Cable before Go-It-Alone was launched. Finally, the Court finds that beginning in Spring 2010, Sprint raised patent issues with Time Warner Cable, including identifying two patents at issue in this suit, and that Time Warner Cable understood that there were "open" intellectual property issues to be resolved with Sprint, including possible patent infringement. Time Warner Cable's in-house patent counsel also monitored the *Vonage* trial and investigated Sprint's patents after that trial, and the Court finds that he did so in anticipation of a possible patent dispute with Sprint. Thus, the Court finds that Time Warner Cable has not shown that it actually believed that Sprint would not attempt to

enforce its patents. Such discussions also undermine any argument that Sprint was indicating that it would *not* enforce its patents.

The Federal Circuit has noted that the most common example of equitable estoppel involves a threat or objection to the allegedly infringing activities followed by a period of inaction. *See SCA Hygiene*, 767 F.3d at 1349 (citing *Aukerman*, 960 F.2d at 1042). Time Warner Cable does not contend that there was any such threat or objection raised in this case prior to suit. In *SCA Hygiene*, the Federal Circuit distinguished cases in which estoppel had been based on specific patent infringement discussions between the parties, *see id.* at 1349-50, but no such discussions took place here before 2010.[4] Accordingly, the Court finds that Sprint did not engage in any conduct that would give rise to a reasonable belief at Time Warner Cable that Sprint would not enforce its patents if Time Warner Cable chose to Go-It-Alone without Sprint. Time Warner Cable thus can point only to Sprint's silence, and its has not shown that that silence amounted to bad faith by Sprint under the circumstances. *See High Point*, 817 F.3d at 1330.

Accordingly, the Court finds that Time Warner Cable has not met is burden to show misleading conduct by Sprint that led Time Warner Cable reasonably to infer that Sprint would not enforce its patents against Time Warner Cable. Thus, Time Warner

---

[4]In June 2010, the correspondence between the parties' in-house patent attorneys ended when Time Warner Cable's Andy Block stated that he would draft a new nondisclosure agreement to cover allegations of patent infringement but then did not contact Sprint's Harley Ball again. Thus, any inaction was at least as attributable to Time Warner Cable's foot-dragging.

Cable has failed to prove the requirements for equitable estoppel, and Sprint is entitled to judgment on that defense.

> B. *Reliance*

Time Warner Cable has also failed to prove the necessary reliance on the allegedly misleading conduct. "The accused infringer must show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action." *See Aukerman*, 960 F.2d at 1042-43. The accused infringer's reliance must be reasonable. *See SCA Hygiene*, 767 F.3d at 1351. In *High Point*, the defendant's testimony that it would have acted differently if litigation had been possible was sufficient to establish reliance, but only because of the absence of any evidence that the defendant's proposed solutions to avoid infringement would have been unrealistic or infeasible. *See High Point*, 817 F.3d at 1331-32. In *SCA Hygiene*, the court concluded that the defendant's testimony that it would not have made certain investments if suit had been filed earlier did not necessarily establish that it acted after considering the implications of the patentee's silence; and that a fact question remained as to whether the defendant relied on that silence or instead ignored the patent or relied on its own opinion that the patent was invalid. *See SCA Hygiene*, 767 F.3d at 1351; *see also Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 879 (Fed. Cir. 1991) (accused infringer did not rely on patentee's silence, but instead relied on the existence of its own patents).

As a preliminary matter, because Time Warner Cable did not actually believe that

Sprint would forego enforcement of its patents (as found by the Court above), the Court further finds that Time Warner Cable did not rely on anything Sprint did in deciding whether and how to Go-It-Alone. *See Sprint v. Comcast*, 2016 WL 7052055, at *16 (summary judgment order).

Time Warner Cable argues that it relied on Sprint's silence and acquiescence in preparing to launch its Go-It-Alone national program and in launching that program in October 2010. As noted above, however, Time Warner Cable knew by Spring 2010 about possible patent issues with Sprint, and it nevertheless proceeded with the program. Moreover, various Time Warner Cable employees testified that they relied on the provisions of the parties' contracts in choosing to Go-It-Alone. Although such employees may have been mistaken in their belief that the contracts gave Time Warner Cable the right to Go-It-Alone without fear of an infringement suit, the Court is persuaded that they nevertheless relied on those provisions and not on Sprint's conduct in making the decision to launch. The Court is also persuaded that Time Warner Cable relied on its counsel's investigation of Sprint's patents during and after the *Vonage* trial. Moreover, the fact that Time Warner Cable anticipated possible patent issues with Sprint indicates that Time Warner Cable did not rely on a belief that Sprint would not enforce the patents. Rather, it is far more likely that Time Warner Cable believed it could successfully defend against any such litigation.

Finally, although Time Warner Cable argues that it might have acted differently if it had known earlier that Sprint intended to enforce the patents, Time Warner Cable

did not offer persuasive evidence that in fact it would not have chosen to proceed with its Go-It-Alone program. For instance, Time Warner Cable suggests that it might have chosen to continue its contractual relationship with Sprint instead. The evidence showed, however, that Time Warner Cable anticipated over two billion dollars in savings if it proceeded without Sprint (and that Time Warner Cable did in fact realize huge savings from Go-It-Alone). Thus, the Court is persuaded that Time Warner Cable would still have chosen to terminate its relationship with Sprint even if Sprint had asserted its patents prior to the accused infringement beginning in 2010.

Accordingly, the Court finds that Time Warner Cable failed to establish this element of reliance, which failure provides another basis for awarding Sprint judgment on this defense of equitable estoppel.

### C. *Material Prejudice*

Nor has Time Warner Cable shown the necessary material prejudice. "Equitable estoppel requires that material prejudice to the accused infringer be caused by his reliance on the patentee's misleading communication." *See SCA Hygiene*, 767 F.3d at 1350 (citing *Aukerman*, 960 F.2d at 1028, 1041-42). This prejudice "may be a change of economic position or loss of evidence." *See Aukerman*, 960 F.2d at 1043.

The Federal Circuit has explained economic prejudice as follows:

> Economic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit. Such damages or monetary losses are not merely those attributable to a finding of liability for infringement. Economic prejudice would then arise in every suit. The

> courts must look for a *change* in the economic position of the alleged
> infringer during the period of delay.  On the other hand, this does not
> mean that a patentee may intentionally lie silently in wait watching
> damages escalate, particularly where an infringer, if he had had notice
> could have switched to a noninfringing product.  Indeed, economic
> prejudice is not a simple concept but rather is likely to be a slippery issue
> to resolve.

*See id.* at 1330 (emphasis in original) (citations omitted).  A nexus is required between

the economic prejudice and the delay—the prejudice must have resulted from the delay.

*See SCA Hygiene*, 767 F.3d at 1347.

Time Warner Cable argues that it suffered economic prejudice from Sprint's

silence, based on its expenses in preparing to enter the VoIP market and to launch its Go-

It-Alone program.  For instance, Time Warner Cable argues that it might have instead

continued its arrangement with Sprint.  As noted above, however, the Court finds that,

in view of the expected (and realized) savings from Go-It-Alone, far in excess of the

royalty found by the jury here, Time Warner Cable would still have proceeded with that

program even if Sprint had asserted its patents earlier, and thus Time Warner Cable did

not incur any costs to its detriment because of the delay.

Time Warner Cable also argues that, even if it proceeded with Go-It-Alone, it

might have made other arrangements if Sprint had asserted its patents earlier.  For

instance, Time Warner Cable argues that it might have extracted a license on favorable

terms.  The Court finds, however, that Time Warner Cable has not shown by a

preponderance of the evidence that it would have been able to secure such a license on

terms more favorable than the royalty determined by the jury in this case.  In that regard,

the Court notes that Time Warner Cable failed to secure such a license even after it became aware of potential patent issues in 2010 prior to the October launch of Go-It-Alone.   Moreover, because Sprint did not accuse Time Warner Cable of infringement for conduct prior to 2010, there is no danger that Sprint allowed damages to escalate during a period of delay prior to 2010.  Thus, the Court finds that Time Warner Cable has failed to show material economic prejudice here.

Time Warner Cable also asserts that it suffered evidentiary prejudice as a result of Sprint's delay in asserting its patents.  Evidentiary or "defense" prejudice "may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts.  *See Aukerman*, 960 F.2d at 1033 (citations omitted).  However, "[c]onclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary evidence, are not sufficient."  *See Meyers v. Asics Corp.*, 974 F.2d 1304, 1308 (Fed. Cir. 1992).

Time Warner Cable argues that witness memories have faded, as shown by various witnesses' testimony that they did not recall specific events, and that two witnesses have died.  The court finds, however, that Time Warner Cable has not shown a material loss of evidence resulting from any delay by Sprint.  The examples of witnesses' inability to recall relate to events in the history of the parties' relationship, relevant only to Time Warner Cable's equitable defenses, but of course those defenses

15

have been asserted only *because* of the delay.[5]  Time Warner Cable has not shown that it suffered any material loss of evidence pertinent to its infringement and invalidity defenses.

### D.    Weighing of Equities

"Finally, the trial court must, even where the three elements of equitable estoppel are established, take into consideration any other evidence and facts respecting the equities of the parties in exercising its discretion and deciding whether to allow the defense of equitable estoppel to bar the suit."  *See Aukerman*, 960 F.2d at 1043; *see also SCA Hygiene*, 767 F.3d at 1343 (quoting *Aukerman*).  The Court concludes that, even if Time Warner Cable had met its burden to prove the three elements of equitable estoppel, the Court would exercise its discretion, after weighing the equities, to deny Time Warner Cable's claim for equitable relief.  First, the Court gives weight to the jury's finding that Time Warner Cable knew or believed, or it was so obvious that Time Warner Cable should have known, that there was a high likelihood that it was infringing a valid patent. *See, e.g.*, *Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*, 833 F. Supp. 2d 321, 330 (E.D.N.Y. 2011) (jury's finding of willful infringement was a factor weighing against equitable relief).  The Court also notes that Time Warner Cable failed to perform any patent clearance work, and it proceeded with its Go-It-Alone launch even after

---

[5]To the extent that such testimony may have been relevant to Sprint's claim of willful infringement, any such loss did not prejudice Time Warner Cable, as the Court has denied Sprint's claim for enhanced damages.

Sprint had raised patent issues.

Time Warner Cable argues that Sprint unfairly lay in wait and sued only when negotiations with Time Warner Cable for other business failed. The Court is persuaded from the totality of the evidence, however, that this case involved two large, sophisticated entities that were essentially locked in an economic *pas de deux*, in which each acted ultimately to further its own self-interest. Thus, this case does not warrant equitable relief that would prevent Sprint from collecting a reasonable royalty from Time Warner Cable for its infringement of Sprint's patents, as found by the jury. Accordingly, and for multiple reasons, the Court awards judgment to Sprint on Time Warner Cable's equitable estoppel defense.

### III.   **Laches**

Time Warner Cable asserts the affirmative defense of laches. In *SCA Hygiene*, the Federal Circuit summarized its law on this defense as follows:

> Laches is an equitable defense to patent infringement that may arise only when an accused infringer proves by a preponderance of evidence that a patentee (1) unreasonably and inexcusably delayed filing an infringement suit (2) to the material prejudice of the accused infringer. If these prerequisite elements are present, a court must then balance all pertinent facts and equities, including the length of delay, the seriousness of prejudice, the reasonableness of excuses, and the defendant's conduct or culpability before granting relief. When found, laches bars retrospective relief for damages accrued prior to filing suit but does not bar prospective relief.
>
> Delays exceeding six years give rise to a presumption that the delay is unreasonable, inexcusable, and prejudicial. Under this presumption, the

17

> burden of evidentiary production shifts from the accused infringer to the patentee. Both of these presumptions disappear if the patentee can identify evidence sufficient for a reasonable jury to conclude either that the delay was excusable or not unreasonable, or that it was not materially prejudicial. If the patentee meets this burden of production, the accused infringer must prove both elements of laches by a preponderance of evidence.

*SCA Hygiene*, 767 F.3d at1343 (citations and internal quotations omitted).[6]

Time Warner Cable argues that the laches presumption arises here because Sprint delayed for more than six years before filing these suits in December 2011. The presumption arises "upon proof that the patentee delayed filing suit for more than six years after actual or constructive knowledge of the defendant's infringing activity." *See Aukerman*, 960 F.2d at 1035-36.

> As an initial response to the defendant's evidence of at least a six-year delay, a patentee may offer proof that the delay has not in fact been six years—that is, that the time it first learned or should have known of the infringement after the patent issued was within six years. If a patentee is successful on this factual issue, no presumption arises.

---

[6]In *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), the Supreme Court held that, in the face of a statute of limitations enacted by Congress, the defense of laches was not available to bar legal relief in a copyright suit. *See id.* at 1974. The Court noted that it had not had occasion to review the Federal Circuit's position that laches is an available defense in a patent suit despite the application of a statute of limitations. *See id.* at 1974 n.15 (citing *Aukerman*, 960 F.2d at 1029-31). In *SCA Hygiene*, in a 6-5 decision upon rehearing *en banc*, the Federal Circuit held that laches remains a defense to legal relief in a patent suit, in spite of the decision in *Petrella*. *See SCA Hygiene*, 807 F.3d at 1315. Thus, the Court considers Time Warner Cable's laches defense in this case. The Court notes, however, that the Supreme Court has granted certiorari in *SCA Hygiene* and thus will review the Federal Circuit's decision to recognize laches as a valid defense in patent infringement actions. *See* 136 S. Ct. 1824 (2016).

*See id.* at 1038 (footnote and citation omitted); *see also Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1464 (Fed. Cir. 1998) (reversing summary judgment of laches; district court erred in applying the presumption because there were issues of fact as to whether the patentee knew or reasonably should have known of the defendant's allegedly infringing activity before the critical date).

Time Warner Cable argues that the presumption should apply here because Sprint knew or should have known of Time Warner Cable's infringing activity by 2005 at the latest. By that time, Time Warner Cable had performed trials with MCI and AT&T and a trial on its own in New Hampshire. Time Warner Cable relies on evidence that its pre-2005 services, like its infringing activity after 2010, utilized PacketCable technology, for which specifications were publicly available. The 2010 activity utilized different equipment, however, and no witness testified that he performed an analysis (even after-the-fact or in preparation for trial) concerning whether the pre-2010 activities infringed Sprint's patents. Time Warner Cable also points to Sprint's position that its patents were blocking patents that covered any attempt to connect VoIP to the PSTN, and it argues that if it infringed in 2010, it must also have infringed back to 2003. No person with the requisite technical knowledge, however, testified that Time Warner Cable actually infringed before 2010, and Sprint's expert explicitly disclaimed any such opinion. Nor did Time Warner Cable's expert perform any such analysis of the pre-2010 equipment in light of Sprint's specific infringement allegations. Moreover, the technology is complex in these cases, and it would not be a simple matter to determine whether Time

Warner Cable's activities infringed particular patent claims. *See Wanlass*, 145 F.3d at 1464 n.2, 1467 (noting that infringement could not be determined based solely on a particular diagram, and that the accused product would need to be tested to determine if it actually infringed; distinguishing case in which infringement was apparent from simply looking at the accused device).

Time Warner Cable argues that the pre- and post-2010 activities need only be "the same or similar" for laches to apply. *See Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.34d 1279, 1295 (Fed. Cir. 2008) (citing *Watkins v. Northwestern Ohio Tractor Pullers Ass'n*, 630 F.2d 1155, 1164 (6th Cir. 1980)). Without any sort of specific analysis, however, the Court is not persuaded that Time Warner Cable has shown that its earlier activities were sufficiently similar that Sprint should be charged with knowledge of infringing activity by Time Warner Cable. In this regard, the Court notes and gives weight to the jury's explicit finding that Time Warner Cable's infringing activity began in 2010, when the parties' hypothetical royalty negotiation should have taken place.

Moreover, even if the presumption did apply here, Sprint has produced evidence to rebut that presumption.

> Once a presumption of laches arises, the patentee may offer proof directed to rebutting the laches factors. Such evidence may be directed to showing either that the patentee's delay was reasonable or that the defendant suffered no prejudice or both. By raising a genuine issue respecting either factual element of a laches defense, the presumption of laches is overcome.

> Thus, the presumption of laches may be eliminated by offering evidence to show an excuse for the delay or that the delay was reasonable, even if such evidence may ultimately be rejected as not persuasive. Such evidence need only be sufficient to raise a genuine issue respecting the reasonableness of the delay to overcome the presumption. . . .
>
> A patentee may similarly eliminate the presumption with an offer of evidence sufficient to place the matter of defense prejudice and economic prejudice genuinely in issue.

*See Aukerman*, 960 F.2d at 1038 (citations omitted). As the Court concluded at the summary judgment stage, *see Sprint v. Comcast*, 2016 WL 7052055, at *18, and as described below, Sprint has produced evidence to support its arguments that any delay was reasonable and that Time Warner Cable did not suffer material prejudice, and such evidence is sufficient to rebut any presumption. Thus, Time Warner Cable bears the burden of proving the elements of an unreasonable and inexcusable delay in filing suit and material prejudice.

With respect to the reasonableness of the delay, a patentee's excuses might include other litigation, negotiations with the accused, or the extent of the infringement. *See Aukerman*, 960 F.2d at 1033; *see also SCA Hygiene*, 767 F.3d at 1345 ("Reasonable explanations for delay include attempts to enforce the patent, such as filing suit against another infringer . . . ."). "The equities may or may not require that the plaintiff communicate its reasons for delay to the defendant." *See Aukerman*, 960 F.2d at 1033.

> However, there can be no rigid requirement in judging a laches defense that such notice *must* be given. If a defendant is, for example, aware of the litigation from other sources, it would place form over substance to require a specific notice. Where there is prior contact, the overall equities may require appropriate notice . . . . However, a notice requirement is not

21

to be rigidly imposed . . . .

*See id.* at 1039; *see also SCA Hygiene*, 767 F.3d at 1346 ("A patentee is not required in all cases to provide notice of related proceedings involving the asserted patent to show its delay was not unreasonable.") (citing *Aukerman*); *Lismont v. Alexander Binzel Corp.*, 813 F.3d 998, 1005 (Fed. Cir. 2016) (with respect to the defendant's notice of other litigation by the patentee, what is important is whether the defendant had reason to believe it was likely to be sued or was in fear of suit by the patentee).

With respect to the length of the delay here, Sprint raised patent issues with Time Warner Cable in 2010 prior to the infringing activity, and Sprint filed this suit in December 2011, 14 months after that activity began. That length of time before filing a large patent case is not unreasonable, particularly in light of the facts that Sprint had first attempted to raise its patent concerns with Time Warner Cable and the parties were negotiating other possible business. Moreover, even if the period of delay is deemed to have begun much earlier, the Court finds that such delay was not unreasonable. Enforcement of the patents against other infringers may provide justification for a delay, and from 2005 to 2009, Sprint attempted to enforce its patents, including patents at issue in these suits, against various companies, including Vonage and Big River. Those suits were widely publicized, Sprint issued press releases about the suits and its intent to enforce its patents against infringers, and Sprint sent a copy of one such notice to Time Warner Cable. Moreover, as found above, Time Warner Cable actually monitored the prior cases in anticipation of possible litigation with Sprint.

Time Warner Cable argues that its ongoing relationship with Sprint at that time required Sprint to provide specific notice that it intended to enforce its patents against Time Warner Cable at the conclusion of the other lawsuits.  As the Federal Circuit has made clear, however, there is no rigid rule requiring a specific notice, and in light of Time Warner Cable's actual knowledge of the prior cases, the notice of the *Vonage* verdict provided by Sprint to Time Warner Cable, and Sprint's press releases, the Court concludes that no other notice was required.  *See Aukerman*, 960 F.2d at 1039 ("If a defendant is, for example, aware of the litigation from other sources, it would place form over substance to require a specific notice.").

Finally, even if Time Warner Cable's infringing activity began in 2003 (contrary to the jury's explicit finding), that infringement was not nearly as substantial in scope as during the time of the 2010 Go-It-Alone program.  For instance, Time Warner Cable's trials in New Hampshire and South Carolina without a third-party provider were not extensive and did not involve a great number of subscribers.  Sprint did not act unreasonably in waiting until Time Warner Cable's nationwide rollout of its Go-It-Alone program to assert its patents.

The Court also finds that Time Warner Cable has failed to prove material prejudice from any delay, for the same reasons set forth above with respect to equitable estoppel.  That failure provides a separate basis for judgment in Sprint's favor on the defense of laches.

Finally, even if a defendant establishes the factual prerequisites of the defense of

laches, relief is not automatic; rather, "courts should grant relief for laches only after balancing all pertinent facts and equities, including the length of delay, the seriousness of prejudice, the reasonableness of excuses, and the defendant's conduct or culpability." *See SCA Hygiene*, 767 F.3d at 1348 (internal quotations omitted) (quoting *Aukerman*, 960 F.2d at 1034). In this case, even if Time Warner Cable had met its burden with respect to the elements of laches, the Court would not grant equitable relief after considering the totality of the evidence and weighing the equities, for the same reasons set forth above with respect to equitable estoppel. Accordingly, Sprint is awarded judgment on Time Warner Cable's affirmative defense of laches.

## IV.   <u>Waiver</u>

Time Warner Cable asserts the affirmative defense of waiver. Time Warner Cable relies on the standard definition of waiver as the intentional relinquishment of a known right. *See State Farm Mut. Auto. Ins. Co. v. Petsch*, 261 F.2d 331, 334 (10th Cir. 1958) (cited by Time Warner Cable). The parties agree that implied waiver may be found from conduct "so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of [that] conduct is possible." *See Irons v. F.B.I.*, 811 F.2d 681, 686 (1st Cir. 1987) (internal quotations and citations omitted) (cited by both Time Warner Cable and Sprint).[7]

---

[7]The Federal Circuit has recognized implied waiver as a defense to patent
(continued...)

Time Warner Cable argues that Sprint waived its right to enforce its patents by failing to raise or assert those patents from 2003 to 2010.  The Court finds, however, that Sprint's conduct during that period does not show that it intentionally relinquished its patent rights.  As discussed above, Sprint had no duty to disclose its patents in this arm's-length business relationship, the parties' contracts did not grant Time Warner Cable any rights with respect to Sprint's patents, and Sprint did raise its patents before Time Warner Cable began engaging in the accused activity.  Certainly there are reasonable explanations for Sprint's silence during that period other than an intent to relinquish patent rights.  For example, Sprint may not have wished to upset its business relationship with Time Warner Cable, or it may have first wished to conclude its patent litigation against other parties, or it may not have deemed any prior infringing activity to be sufficiently substantial.

Time Warner Cable also points to evidence that Harley Ball, Sprint's in-house patent counsel, instructed Sprint executives in 2005 not to accuse other companies of patent infringement and not to threaten patent litigation.  The Court rejects Time Warner Cable's argument, however, that no reasonable explanation exists for that directive other

---

[7](...continued)
infringement in a context not applicable here—to support a finding of implied waiver in the context of an open standard setting organization, "the accused must show by clear and convincing evidence that the patentee's conduct was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished." *See Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1348 (Fed. Cir. 2011) (internal quotation omitted).

than an intent to relinquish Sprint's patent rights.  Again, one such explanation, and the one this Court believes to be true, is that Sprint did not wish to imperil business relationships unless and until it was ready to enforce its patent rights.

Finally, Time Warner Cable relies again on Mr. Patterson's statement to Mr. Campbell that Time Warner Cable did not need to worry while it was Sprint's customer. As discussed above, however, that statement is not indicative of any intent to forego patent right once the parties' relationship had changed significantly, as it did when Time Warner Cable chose to Go-It-Alone without Sprint.

The Court finds that Time Warner Cable has not met its burden to show that Sprint, by its words or conduct, intentionally gave up its right to enforce its patents against Time Warner Cable after the decision to Go-It-Alone.  Accordingly, the Court awards judgment to Sprint on this affirmative defense.

## V.    **Acquiescence**

Finally, Time Warner Cable asserts the equitable defense of acquiescence.  The Federal Circuit has recognized, as a defense to patent infringement, that an implied license may arise through acquiescence.  *See Winbond Electronics Corp. v. ITC*, 262 F.3d 1363, 1374 (Fed. Cir. 2001).  An implied license signifies a patentee's waiver of its patent rights.  *See id.*  In the context of trademark infringement, the Tenth Circuit has held that "[a]cquiescence is an affirmative defense that requires a finding of conduct on the plaintiff's part that amount to an assurance of the defendant, express or implied, that

plaintiff would not assert his trademark rights against the defendant." *See Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 547-48 (10th Cir. 2000) (internal quotations and citations omitted) (cited by Time Warner Cable). Acquiescence requires a showing more demanding than that required to establish laches. *See id.* at 548. As with laches, the defendant must prove an inexcusable delay and undue prejudice resulting from that delay, but while laches allows for passive consent, acquiescence requires active consent and an active representation that the plaintiff will not asserts its rights. *See ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic and Sports Physical Therapy P.C.*, 314 F.3d 62, 67 (2d Cir. 2002) (cited by Time Warner Cable).

Time Warner Cable argues that Sprint acquiesced to its infringing activities by entering into the non-exclusive contracts that required Sprint to assist in a transition to Go-It-Alone and by recognizing Time Warner Cable's infringing activities without objection. The Court rejects this defense, however. As previously discussed, the Court finds that by entering into the parties' contracts, which explicitly stated that no license or patent rights were granted to Time Warner Cable, Sprint did not indicate that it would refrain from asserting its patents, especially in the event that Time Warner Cable chose to proceed without Sprint in the future. The Court further finds that Sprint did not engage in any conduct suggesting that it would not asserts its patent rights. Moreover, for the same reasons discussed above with respect to equitable estoppel, the Court finds that Time Warner Cable has failed to show an inexcusable delay or prejudice resulting therefrom. Accordingly, the Court awards judgment to Sprint on this equitable defense.

## VI.    **Enhanced Damages**

Based on the jury's finding of willful infringement, Sprint seeks enhanced damages pursuant to 35 U.S.C. § 284.  Section 284 provides that, if damages are awarded for infringement, "the court may increase the damages up to three times the amount found or assessed."  *See* 35 U.S.C. § 284.  In the past, the Federal Circuit applied a two-pronged test announced in *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (*en banc*).  Under that test, the patent owner had to show, by clear and convincing evidence, that "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent;" and if that threshold objective standard was satisfied, the patent owner had to show that  that "objectively-defined risk . . . was either known or so obvious that it should have been known to the alleged infringer."  *See id.* at 1371.  Last June, however, the Supreme Court rejected the *Seagate* test.  *See Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016).

In *Halo*, the Supreme Court confirmed that an award of enhanced damages under Section 284 lies within the district court's discretion.  *See id.* at 1935.  In exercising that discretion, however, district courts are limited to awarding enhanced damages only in "egregious cases of misconduct beyond typical infringement."  *See id.*  Moreover, enhanced damages do not follow automatically from a finding of egregious misconduct, as the district court should take into account the particular circumstances of the case.  *See id.* at 1933.  The Supreme Court elaborated as follows:

> Awards of enhanced damages . . . are not to be meted out in a typical infringement case, but are instead designed as a "punitive" or "vindictive" sanction for egregious infringement behavior.  The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.

*See id.* at 1932 (citation omitted).  The Supreme Court rejected the *Seagate* test as unduly rigid because it first required a finding of objective recklessness (prong 1), which requirement could shield from enhanced damages "many of the most culpable offenders, such as the wanton and malicious pirate who intentionally infringes another's patent—with no doubts about its validity or any notion of a defense—for no purpose other than to steal the patentee's business," for instance, if the infringer's attorney later finds a reasonable defense.  *See id.* at 1932-33 (internal quotations and citation omitted).  Thus, subjective willfulness alone, intentional or knowing, may support an award of enhanced damages.  *See id.* at 1933.  The Court also rejected *Seagate*'s clear-and-convincing standard, holding that enhanced damages must instead be shown by a preponderance of the evidence.  *See id.* at 1934.

In subsequent cases, the Federal Circuit has applied and explained the impact of *Halo*.  That court has confirmed that subjective bad faith alone can support an award of enhanced damages, and that "the appropriate time frame for considering culpability is by assessing the infringer's knowledge at the time of the challenged conduct."  *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1340 (Fed. Cir. 2016) (citing *Halo*, 136 S. Ct. at 1933).  Moreover, *Halo* did not change the established law that questions of fact

concerning willfulness (for instance, whether the infringer knew of the patents) should be resolved by the jury—although an enhanced damages award does not follow automatically from a jury finding of willful infringement, as that question is "committed to the sound discretion of the district court." *See id.* at 1341 & n.13. The Federal Circuit has further noted that *Halo* did not disturb the substantive standard for the second prong of the *Seagate* test, concerning subjective willfulness. *See WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016), *petition for cert. filed* (U.S. Feb. 17, 2017). Finally, even though satisfaction of the first *Seagate* prong is no longer a prerequisite for an award of enhanced damages, the objective reasonableness of the accused infringer's defenses is still a relevant factor for the district court to consider in exercising its discretion concerning an award of enhanced damages. *See id.* at 1363.

Based on that caselaw, this Court decided that it was appropriate to ask the jury for a finding on the issue of willful infringement based only on the second *Seagate* prong. Thus, the Court instructed the jury in relevant part as follows:

> In order to prove willful infringement, Sprint must prove, by a preponderance of the evidence, that Time Warner Cable knew or believed, or it was so obvious that it should have known, that there was a high likelihood that it was infringing a valid patent. In making that determination, you should consider all facts relating to Time Warner Cable's knowledge at the time it performed acts of infringement.

> With respect to this question of willfulness, you are instructed that, under the law, Time Warner Cable had no duty to obtain any opinions of counsel.

The jury did find willful infringement by Time Warner Cable under that standard.

30

Although the Court considers that finding that Time Warner Cable, in essence, knowingly or recklessly infringed Sprint's patents, it is not obligated to award enhanced damages based on that finding, and it declines to do so in this case.

Sprint encourages the Court to consider the factors set out by the Federal Circuit in *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992).  *See WBIP*, 829 F.3d at 1325, 1342 (post-*Halo*, upholding enhanced damages awarded by the district court after consideration of the *Read* factors); *see, e.g.*, *Polara Eng'g, Inc. v. Campbell Co.*, __ F. Supp. 3d __, 2017 WL 754609, at *25 (C.D. Cal. Feb. 27, 2017) (applying *Read* factors post-*Halo*) (citing cases).   Those nine factors, which may be relevant to the determination of whether enhanced damages should be awarded, are as follows:

> (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent, investigated the patent and formed a good faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior in the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the misconduct; (7) the remedial action by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct.

*See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1327 (Fed. Cir. 2013). After considering these factors, however, the Court is not persuaded that this case represents an especially egregious case of infringement for which a punitive sanction is warranted.

The fourth, sixth, and seventh factors do weigh in favor of enhanced damages: Time Warner Cable is large and wealthy enough to pay enhanced damages; the

infringement lasted for approximately four years until expiration of the patents; and Time Warner Cable took no remedial action to avoid infringement.  In addition, the jury's finding of willfulness would seem to push the second factor in Sprint's favor, but the  Court's instructions entitled the jury to find willfulness if Time Warner Cable only *should have known* of a high likelihood of infringement.[8]  Moreover, Time Warner Cable's in-house patent counsel testified that he did investigate Sprint's patents, and that testimony is credible in light of the evidence that he monitored the *Vonage* trial; even though Time Warner Cable reasonably should have anticipated litigation, the Court is not persuaded that any belief by Time Warner Cable that it was not infringing a valid patent was not held in good faith.  Thus, the second factor weighs only slightly in favor of enhancement.

The Court concludes, however, that the other factors do not favor an award of enhanced damages here.  The Court finds that Time Warner Cable did not deliberately copy Sprint's ideas or design (first factor); the evidence was clear that Time Warner Cable used equipment based on the PacketCable specifications, and there is no evidence that those designs were intentionally copied from Sprint's patents.  Based on its familiarity with the entire course of this litigation, the Court finds that Time Warner Cable did not engage in litigation misconduct (third factor); although Sprint complains

---

[8]In fact, based on the evidence, this is the most likely conclusion.  There was no evidence that Time Warner Cable actually knew that it was infringing.  Rather, the evidence supports the conclusion that it should have known of a high likelihood of infringement.

that Time Warner Cable significantly narrowed its defenses at trial, such a decision to focus on the strongest arguments (like Sprint's own narrowing of claims for trial) is not improper, and the Court is not persuaded that Time Warner Cable otherwise over-litigated the case.  The Court concludes that this case was relatively close (fifth factor); although Sprint ultimately prevailed at trial on some patent claims, it abandoned other claims, and Time Warner Cable's non-infringement, damages, and invalidity defenses were reasonable.  There is no evidence that Time Warner Cable acted out of a motivation to harm Sprint (eighth factor); although Time Warner Cable ended its relationship with Sprint in choosing to Go-It-Alone, it was driven by its own self-interest (Sprint argues that Time Warner Cable was motivated by the amount of savings to be gained) and not by any desire to harm Sprint.  Finally, Time Warner Cable did not attempt to conceal its misconduct (ninth factor); although Sprint stresses that Time Warner Cable attempted to remain anonymous when it monitored the *Vonage* trial, the Court agrees with Time Warner Cable that such conduct is not particularly nefarious (each side clearly kept its cards close to the chest during the relationship), and there is no suggestion that Time Warner Cable attempted to conceal its infringement.

Thus, the Court concludes that the *Read* factors do not particularly support an award of enhanced damages in this case.  Sprint relies heavily on the jury's finding of willful infringement, and it stresses that Time Warner Cable acted primarily for its own financial gain.  As discussed above, however, the jury's finding is not dispositive on this issue, as the Court has discretion not to award enhanced damages even for willful

infringement.[9]  The Court concludes in its discretion that this case is not egregious, but is closer to the typical infringement case.  Indeed, the fact that the infringer acted pursuant to a financial motive does not distinguish this case from the garden-variety infringement case.  Moreover, the Court is persuaded that the jury's royalty award, in the entire amount requested by Sprint, adequately compensates Sprint for the infringement. *See, e.g.*, *Sociedad Espanola de Electromedicina y Calidad, S.A. v. Blue Ridge X-Ray Co.*, __ F. Supp. 3d __, 2016 WL 7473422, at *8 (W.D.N.C. Dec. 28, 2016) (in denying enhanced damages despite jury's finding of willfulness, noting that the plaintiff had been amply compensated by the jury's royalty award); *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 2016 WL 4208236, at *8 (N.D. Cal. Aug. 10, 2016) (in denying enhanced damages despite jury's finding of willful infringement, noting that the jury had awarded the maximum royalty sought).  The Court thus denies Sprint's request

---

[9]Since *Halo*, district courts have routinely declined to award enhanced damages (usually upon consideration of the *Read* factors) despite jury findings of willful infringement. *See, e.g.*, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l*, 2017 WL 130236, at *3-5 (N.D. Cal. Jan. 13, 2017); *Sociedad Espanola de Electromedicina y Calidad, S.A. v. Blue Ridge X-Ray Co.*, __ F. Supp. 3d __, 2016 WL 7473422, at *8 (W.D.N.C. Dec. 28, 2016), *appeal filed* (Fed. Cir. Jan. 31, 2017); *XY, LLC v. Trans Ova Genetics, LC*, 2016 WL 6664619, at *3-4 (D. Colo. Nov. 10, 2016); *Radware, Ltd. v. F5 Networks, Inc.*, 2016 WL 4427490, at *5-8 (N.D. Cal. Aug. 22, 2016); *Presidio Components, Inc. v. American Technical Ceramics Corp.*, 2016 WL 4377096, at *20-21 (S.D. Cal. Aug. 17, 2016), *appeal filed* (Fed. Cir. Sept. 19, 2016); *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 2016 WL 4208236, at *8 (N.D. Cal. Aug. 10, 2016), *appeal filed* (Fed. Cir. Sept. 1, 2016); *Trustees of Boston Univ. v. Everlight Electronics Co.*, __ F. Supp. 3d __, 2016 WL 3976617, at *2-4 (D. Mass. July 22, 2016), *appeal filed* (Fed. Cir. Aug, 29, 2016); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2016 WL 3880774, at *15-17 (N.D. Cal. July 18, 2016), *appeal filed* (Fed. Cir. Aug. 22, 2016).

for enhanced damages, and it awards Time Warner Cable judgment on that claim.[10]

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's claim for enhanced damages is hereby **denied**, and defendants are awarded judgment on that claim.

IT IS FURTHER ORDERED BY THE COURT THAT defendants' motions (Doc. ## 381, 438, 443), to strike evidence and related argument concerning Time Warner Cable's equitable defenses are **granted in part** as set forth herein.

IT IS FURTHER ORDERED THAT defendants' motion for judgment as a matter of law on their equitable defenses pursuant to Fed. R. Civ. P. 50 (Doc. # 431) is hereby **denied**.

IT IS FURTHER ORDERED THAT plaintiff's motion for judgment on defendants' equitable defenses at the close of defendants' case pursuant to Fed. R. Civ. P. 52(c) (Doc. # 436) is hereby **denied as moot**.

IT IS FURTHER ORDERED THAT defendants' motion to strike portions of

---

[10]In light of this ruling, the Court denies as moot Time Warner Cable's motion to strike portions of Sprint's oral argument concerning enhanced damages (Doc. # 444).

plaintiff's oral argument concerning enhanced damages (Doc. # 444) is **denied as moot**.


IT IS SO ORDERED.


Dated this 14th day of March, 2017, in Kansas City, Kansas.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge