## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS CO., L.P.,

     *Plaintiff*,

v.

TIME WARNER CABLE, INC., *et al.*,

     *Defendants*.

Case No. 11-2686-JWL

## DEFENDANTS TIME WARNER CABLE, INC., ET AL.'S MEMORANDUM IN SUPPORT OF MOTION UNDER RULES 50(b) AND/OR 59(a) FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL

# TABLE OF CONTENTS

I.      INTRODUCTION .............................................................................................1

II.     LEGAL STANDARD........................................................................................1

III.    ARGUMENT .....................................................................................................2

        A.      The Court Should Grant JMOL On Sprint's Requested Damages .........................2

                1.      Dr. Rao Admittedly Has No Damages Opinion Unless The Patents
                        Are "Blocking Patents," Which Sprint Failed To Prove.............................2

                2.      Alternatively, If The Patents Are "Blocking Patents," Then The
                        First Infringement Was In 2003, In Which Case Dr. Rao Has No
                        Opinion .........................................................................................8

                3.      Regardless, Dr. Rao Admits That His Damages Opinion Ultimately
                        Stems From "Junk Science"......................................................................10

        B.      The Court Should Grant JMOL Of Non-Infringement Or Alternatively,
                Order A New Trial On The Issue Of Infringement.................................................11

                1.      The Jury Had No Reasonable Basis To Find That TWC Performed
                        The "In Response To" Limitation...............................................................12

                2.      The Jury Had No Reasonable Basis To Determine That The
                        Accused System Satisfied Other Claim Limitations..................................14

        C.      The Court Should Grant JMOL Of Invalidity Or Alternatively, Order A
                New Trial ........................................................................................21

                1.      Sprint's Patents Are Invalid For Lack Of Written Description ................21

                2.      Sprint's Patents Are Invalid As Anticipated And Obvious ......................22

        D.      The Court Should Grant JMOL Of No Willfulness...............................................23

IV.     CONCLUSION.................................................................................................24

# TABLE OF AUTHORITIES

## CASES

*Aid for Women v. Foulston*,
  2005 WL 6964192 (D. Kan. July 14, 2005) ............................................................ 2

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
  6 F.3d 1523 (Fed. Cir. 1993) ................................................................................. 24

*AquaTex Indus. v. Techniche Sols.*,
  479 F.3d 1320 (Fed. Cir. 2007) ............................................................................. 11

*Brady v. Southern Ry.*,
  320 U.S. 476 (1943) ................................................................................................ 1

*Chisholm Bros. Farm Equip. Co. v. Int'l Harvester Co.*,
  498 F.2d 1137 (9th Cir. 1974) ................................................................................. 1

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*,
  145 F.3d 1303 (Fed. Cir. 1998) ............................................................................. 18

*Dawn Equip. Co. v. Kentucky Farms Inc.*,
  140 F.3d 1009 (Fed. Cir. 1998) ............................................................................. 11

*Eastman Kodak Co. v. Agfa-Gevaert NV*,
  560 F. Supp. 2d 227 (W.D.N.Y. 2008) .................................................................. 24

*Elm Ridge Expl. Co., LLC v. Engle*,
  721 F.3d 1199 (10th Cir. 2013) .......................................................................... 1, 2

*Etherton v. Owners Ins. Co.*,
  829 F.3d 1209 (10th Cir. 2016) ............................................................................... 1

*Fiers v. Revel*,
  984 F.2d 1164 (Fed. Cir. 1993) ............................................................................. 21

*Fromson v. W. Litho Plate and Supply Co.*,
  853 F.2d 1568 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer
  Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) ...................... 9

*Fujifilm Corp. v. Motorola Mobility LLC*,
  2015 WL 1265009 (N.D. Cal. 2015) ....................................................................... 9

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016) .......................................................................................... 23

*In re Durso Supermarkets,*
  193 B.R. 682 (S.D.N.Y. 1996) .................................................................... 3

*In re Mirena HUD Prods. Liab. Litig.,*
  2016 U.S. Dist. LEXIS 99221 (S.D.N.Y. July 28, 2016) ......................... 11

*King v. Berryhill,*
  2017 WL 513971 (D. Kan. Feb. 8, 2017) ..................................................... 1

*LaserDynamics, Inc. v. Quanta Comp., Inc.,*
  694 F.3d 51 (Fed. Cir. 2012) ................................................................. 2, 9

*Lucent Techs., Inc. v. Gateway, Inc.,*
  580 F.3d 1301 (Fed. Cir. 2009) ................................................................... 2

*M.D. Mark, Inc. v. Kerr-McGee Corp.,*
  565 F.3d 753 (10th Cir. 2009) .................................................................... 2

*Mirror Worlds, LLC v. Apple Inc.,*
  692 F.3d 1351 (Fed. Cir. 2012) ................................................................. 11

*Novozymes A/S v. Dupont Nutrition Biosciences APS,*
  723 F.3d 1336 (Fed. Cir. 2013) ................................................................. 21

*Rohm & Haas Co. v. Brotech Corp.,*
  127 F.3d 1089 (Fed. Cir. 1997) ................................................................. 11

*Sheedy v. BSB Props., LC,*
  2016 WL 4126463 (D. Utah Aug. 2, 2016) .................................................. 1

*Talvera v. Wiley,*
  725 F.3d 1262 (10th Cir. 2013) ................................................................. 11

*TK-7 Corp. v. Estate of Barbouti,*
  993 F.2d 722 (10th Cir. 1993) .................................................................... 3

*Treaster v. HealthSouth Corp.,*
  442 F. Supp. 2d 1171 (D. Kan. 2006) ....................................................... 11

*Uniloc USA, Inc. v. Microsoft Corp.,*
  632 F.3d 1292 (Fed. Cir. 2011) ................................................................. 10

*Wang Labs., Inc. v. Toshiba Corp.,*
  993 F.2d 858 (Fed. Cir. 1993) .................................................................... 9

*Wannall v. Honeywell, Inc.,*
  775 F.3d 425 (D.C. Cir. 2014) .................................................................... 2

*WBIP, LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016) ............................................................................ 24

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
   837 F.3d 1358 (Fed. Cir. 2016) ............................................................................ 23

## STATUTES

35 U.S.C. § 112 ................................................................................................................ 20

## RULES

Fed. R. Civ. P. 37(c)(1) ..................................................................................................... 2

Fed. R. Civ. P. 50(a)(1) ..................................................................................................... 1

Fed. R. Civ. P. 50(b) ......................................................................................................... 1

Fed. R. Civ. P. 59(a) ......................................................................................................... 1

## I.   <u>INTRODUCTION</u>

Pursuant to Federal Rule of Civil Procedure 50(b), Time Warner Cable, Inc. *et al.* ("TWC") respectfully request judgment as a matter of law ("JMOL") that (1) Sprint Communications Co., L.P. ("Sprint") is not entitled to the damages found by the jury, (2) TWC did not infringe the asserted claims of Sprint's patents, either literally or under the doctrine of equivalents, (3) the asserted claims are invalid, and (4) any infringement was not willful.  TWC, therefore, requests that the Court issue JMOL, deciding these issues in TWC's favor. Alternatively, TWC requests a new trial on issues (1)-(3) under Rule 59(a).

## II.   <u>LEGAL STANDARD</u>

JMOL is appropriate where, as here, "[t]here is no legally sufficient evidentiary basis for a reasonable jury to find for [Sprint]."  *See* Fed. R. Civ. P. 50(a)(1); *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1224 (10th Cir. 2016) (quoting *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013)) ("Judgment as a matter of law is appropriate . . . [where] evidence points but one way[.]").  It is the Court's "duty to direct a verdict in favor of [TWC]" in such situations.  *See Chisholm Bros. Farm Equip. Co. v. Int'l Harvester Co.*, 498 F.2d 1137, 1140 (9th Cir. 1974); *accord Brady v. Southern Ry.*, 320 U.S. 476, 479-80 (1943).

"Rule 59 provides the mechanism by which a court can . . . set aside a verdict and order a new trial."  *King v. Berryhill*, No. 15-1293-JWL, 2017 WL 513971, at *1 (D. Kan. Feb. 8, 2017) (quotation omitted); *see* Fed. R. Civ. P. 59(a).  A motion for a new trial "normally involves a review of the facts presented at trial[.]"  *Sheedy v. BSB Props., LC*, No. 2:13-cv-290-JNP, 2016 WL 4126463, at *2 (D. Utah Aug. 2, 2016) (quotation omitted).  "In deciding a new trial motion based on insufficiency of the evidence, a district court must analyze whether the verdict 'is clearly, decidedly or overwhelmingly against the weight of the evidence.'"  *Elm Ridge Expl. Co.,*

*LLC*, 721 F.3d at 1216 (quoting *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762 (10th Cir. 2009)).

## III.   ARGUMENT

### A.   The Court Should Grant JMOL On Sprint's Requested Damages

TWC renews its request that the Court grant JMOL on Sprint's requested damages of $139,800,000—which the jury awarded in full.   "The burden of proving damages falls on [Sprint]."  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *see also LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012).   For the reasons set forth below, Sprint's damages theory rested on unsupported and contradictory assumptions and did not comply with principles of damages law.   Thus, Sprint has failed to sustain its burden. JMOL[1] should be granted.

### 1.   Dr. Rao Admittedly Has No Damages Opinion Unless The Patents Are "Blocking Patents," Which Sprint Failed To Prove

As TWC explained in its Rule 50(a) Motion, Sprint's sole evidence of damages, its expert's (Dr. Mohan Rao's) damages opinion, rests on a critical factual assumption that Sprint failed to prove at trial.   Specifically, Dr. Rao admitted he has no damages opinion unless Sprint's patents are "blocking patents" (a term he used to refer to the assumed fact that, absent a license,

---

[1] Sprint's damages evidence requires JMOL because it is legally insufficient to sustain Sprint's burden.  However, should the Court deny TWC's JMOL Motion, TWC alternatively requests a new trial under Fed. R. Civ. P. 59.   In connection with such a new trial, Sprint should be precluded from (i) proffering its flawed damages analyses, (ii) supplementing its expert opinions and/or offering new opinions, and (iii) seeking additional evidence through discovery, given that the relevant disclosure deadlines have long passed.  In short, Sprint should not be permitted to benefit from its evidentiary failure (*e.g.*, by seeking at a new trial damages in excess of $139.8 million), and TWC would be prejudiced if Sprint were permitted to do so.  *See* Fed. R. Civ. P. 37(c)(1); *see also Aid for Women v. Foulston*, No. 03-1353-JTM, 2005 WL 6964192, at *4 (D. Kan. July 14, 2005) (excluding supplemental expert report submitted after disclosure deadlines passed and refusing to reopen discovery because that would "undermine[] the very reason for . . . deadlines").  *Accord Wannall v. Honeywell, Inc.*, 775 F.3d 425, 429 (D.C. Cir. 2014) (upholding exclusion of revised expert opinion submitted after disclosure deadlines).

"you cannot practice voice over IP technology and connect to the PSTN without infringing [Sprint's] patents") (Tr. 1067:1-6 (Rao));[2] (*see* Dkt. 432 at 1-6).   Although "Dr. Rao may certainly base his opinions on [this] assumption[]," this Court made clear that "Sprint will be obliged at trial to support" the assumption with sufficient evidence.   (Dkt. 286 at 33-34.)   The Court was correct in imposing upon Sprint the requirement of evidentiary support for Dr. Rao's assumption.   The Tenth Circuit has explained that while an expert is permitted to testify based on factual assumptions, those "facts assumed by [the expert must] be shown by the evidence."   *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 731-32 (10th Cir. 1993); *see also, e.g.*, *In re Durso Supermarkets*, 193 B.R. 682, 703 (S.D.N.Y. 1996) ("It is the burden of the proponent of an expert's opinion to prove that the underlying assumptions of the experts are true.").   In particular, it is "plaintiffs['] . . . burden of proving the underlying assumptions contained in the[ir damages expert's] report"; if they do not, "plaintiffs fail[] to meet their burden of showing damages" and JMOL is warranted.   *TK-7 Corp.* 993 F.2d at 732, 734-35.   That is the precise situation here.

### a.     Dr. Rao's "Blocking Patent" Assumption Was Critical To His Damages Analysis

Dr. Rao admitted at trial that he has no damages opinion unless the asserted patents are "blocking patents," meaning that it is impossible to "practice voice over IP technology and connect to the PSTN without infringing."   (Tr. 1067:1-6; *see* Tr. 1066:13-1069:14 (Rao); *see also* Tr. 2776:7-20 (Sprint counsel agreeing that, for Dr. Rao's opinion to stand, it must be "assume[d] that [Sprint's patents] are blocking patents, . . . [without] which you cannot hook up to the PSTN from a packet-based network").)   As Dr. Rao explained, the "blocking patent"

---

[2] All trial transcript excerpts and trial exhibits are attached as Exhibits C and D, respectively, to the Declaration of Stephanie N. Grace ("Grace Decl."), filed concurrently.

assumption is essential to his opinion because, otherwise, he would need to calculate a royalty

for each of the patents individually, which he did not do:

> Q.   And it's true, isn't it, that in your report, *you haven't provided any opinion regarding what the royalty would be if the patents are not blocking patents, right?*
>
> A.   *Correct.*  Again, I have to take – as an economist, I have to take an assumption from a technical expert.  So in this case, I relied on Dr. Wicker for the blocking patent opinion.  Had he given me a different kind of opinion, … *I would have calculated a royalty rate that split up across those patents.*
>
> Q.   And you understand that from Dr. Wicker that the Christie patents are key patents without which you cannot operate VoIP and interconnect to the PSTN, right?
>
> A.   That's my understanding from Dr. Wicker.

(Tr. 1068:22-1069:14 (Rao) (emphases added); *see* Grace Decl., Ex. A (Rao Rep.) at ¶¶ 32-38

(describing the blocking patent assumption).)

Dr. Rao explained his "blocking patent" assumption using an analogy that the PSTN

interconnectivity offered by Sprint's patents is like a toll bridge.  (Tr. 1020:22-1023:12 (Rao).)

Specifically, he testified that "Sprint's technology is sort of the toll gate to using that bridge";

and, in order to offer those services, a licensee "would only pay once because that's the value of

-- of the technology."  (*Id.* at 1022:5-9.)  In other words, according to Dr. Rao, "whether it's one

patent or five patents, when they're blocking patents," Sprint is entitled to receive his prescribed

royalty.  (*Id.*)

Dr. Rao's "blocking patent" assumption was thus the reason why Sprint did not redo its

entire damages analysis when, just three days before trial, Sprint dropped two of the patents-in-

suit that it had long asserted against TWC, reducing the number of patents-in-suit from seven to

five.   Until then, Sprint collectively asserted seven of the "Broadband" and "Call Control"

patents against TWC.  (*See, e.g.*, Grace Decl., Ex. A (Rao Rep.) at ¶ 4; *see infra* n. 11 (defining

patents).)  Accordingly, Dr. Rao's $1.37 royalty figure reflected the price that TWC would pay not just for the five patents ultimately tried, but for seven patents including two additional patents that Sprint dropped.  (*See* Dkts. 352, 355 (dropping two patents).)  After dropping those patents, however, Sprint did not revise, reduce, or reapportion its damages claim.  Instead, Sprint asserted that TWC should pay the same $1.37 figure regardless of the number of patents infringed, and therefore regardless of whether seven or five patents were tried, because each patent-in-suit is a "blocking patent."[3]

Thus, Dr. Rao's admission—that his entire analysis rests on the assumption that the patents-in-suit are "blocking patents"—was not an oversight or harmless error.  Rather, that assumption was critical to Dr. Rao's damages opinion which is the sole basis for Sprint's damages claim and the jury's damages verdict.  Dr. Rao has no opinion, and Sprint has no damages claim, if the "blocking patent" assumption lacks support.

### b.   Dr. Rao's "Blocking Patent" Assumption Lacks Any Evidentiary Basis In The Record And Is Contradicted By The Court's Rulings

Although Sprint's entire damages claim critically depends on the "blocking patent" assumption, Sprint has offered no evidence, let alone legally sufficient evidence, to support it.  To the contrary, the Court's findings regarding TWC's equitable defenses contradict, and are ultimately fatal to, Dr. Rao's "blocking patent" assumption.  In its findings, the Court identified a

---

[3] Although unnecessary to support TWC's Motion for JMOL in view of Dr. Rao's unequivocal reliance on his failed "blocking patent" assumption, Dr. Rao also further elaborated on the critical importance of his "blocking patent" assumption when explaining his reliance on the Paetec and VoiceGlo settlement agreements.  Those agreements covered *more than 100 patents*, not merely the five patents-in-suit.  Dr. Rao admitted that he did not apportion the value of the 100+ licensed patents other than the five patents at issue here, claiming that his "blocking patent" assumption obviated any need to do so.  (*See, e.g.*, Grace Decl., Ex. B (Rao Dep.) at 89:4-91:21, 505:6-513:24 (Dr. Rao explaining that he did not need to do separate analyses for the value of the 100+ patents licensed to VoiceGlo and Paetec because of his "blocking patent" assumption).)

failure of proof—no evidence demonstrated that every system that connects VoIP to PSTN was proven to infringe, as would be required to support Dr. Rao's "blocking patent" assumption:

> [It is] Sprint's position that its patents were blocking patents that covered any attempt to connect VoIP to the PSTN. . . . No person with the requisite technical knowledge, however, testified that Time Warner Cable actually infringed before 2010, and Sprint's expert explicitly disclaimed any such opinion.  Nor did Time Warner Cable's expert perform any such analysis of the pre-2010 equipment in light of Sprint's specific infringement allegations.

(Dkt. 476 at 19.)

This explanation echoed the Court's earlier observation on TWC's Rule 50(a) Motion: the notion that "any hookup to the PSTN from a packet-based system [*i.e.*, VoIP] must infringe" is not based on any "competent evidence" in the record but instead, is based on "surmise and conjecture."[4]  (Tr. 1424:24-1425:4 (ruling on initial Rule 50(a) Motion).)  In other words, the Court had already concluded *no competent evidence* exists that the Sprint patents are "blocking patents" by Dr. Rao's definition, and as required to support Dr. Rao's opinion.  Indeed, the Court noted that none of Sprint's witnesses supports that proposition: neither Dr. Rao nor Sprint employees (such as Harley Ball) were "qualified to have given any such opinion," and Dr. Wicker "disclaimed any [such] opinion."  (Tr. 1425:4-15.)[5]

Moreover, Sprint affirmatively contends that "the 'brain' and the 'bridge' of Mr. Christie's inventions were first deployed by TWC in its Go-It-Alone network in the fall of 2010," and that "there is *insufficient evidence* . . . to support an inference that the date of first infringement is any date other than October 2010."  (Dkt. 402 at 17-18 (emphasis added).)

---

[4] The Court also held before trial that "it cannot be determined whether TWC actually infringed before 2010."  (Dkt. 286 at 34 (*Daubert* Order) (emphasis added).)

[5] Although Dr. Wicker testified that TWC's Go It Alone network infringed beginning in 2010, he did not do so for TWC's earlier VoIP-to-PSTN connections—such as Pine Tree beginning in 2003—or for *any* other architectures. To the contrary, according to Sprint, "Dr. Wicker conclude[d] that there was *insufficient evidence* in the record to determine whether TWC's pre-GIA" VoIP-to-PSTN connections infringed the patents.  (Dkt. 402 at 15 n. 9 (emphasis added).)

Sprint made this assertion in order to advance 2010 as the date of TWC's first infringement, which Sprint needed to support its damages theory and to oppose TWC's equitable defenses. But Sprint's assertion that no evidence showed that TWC's pre-2010 VoIP-to-PSTN activities infringe necessarily and logically signifies that *not all* VoIP-to-PSTN systems infringe, which directly refutes Dr. Rao's critical "blocking patent" assumption.  Indeed, it is *undisputed* that TWC began connecting VoIP services to the PSTN with TDM interconnects in 2003 with MCI and Pine Tree, and offered VoIP-to-PSTN services on its own in New Hampshire in 2005—all of which Sprint has never accused of infringement.  (*See, e.g.*, Tr. 1072:7-11, 1075:25-1076:9, 1077:8-11 (Rao); Tr. 1969:15-18 (Nichols); 2017:3-2023:3 (MacDermott); Dkt. 379, Ex. A (Modi Dep.) at 57:9-58:7; Trial Ex. 200 at §§ 4.2, 17.4; Trial Ex. 1515.)

Sprint did not, and cannot, prove Dr. Rao's assumption that the patents are "blocking patents" if TWC's pre-2010 activities connecting its VoIP network to the PSTN do not also infringe.  Absent such proof, Dr. Rao has no damages opinion, Sprint has no damages claim (as to which it has the burden), and the damages verdict cannot stand.  Therefore, JMOL is warranted.

        **c.**      **The Jury's Implicit Finding That TWC First Began Infringing The Patents-In-Suit No Earlier Than 2010 Contradicts Dr. Rao's "Blocking Patent" Assumption**

Separately and independently from Sprint's failure of evidence that the Sprint patents are "blocking patents," any such assertion could not be supported in view of the jury's factual determination in response to the Court's special interrogatory No. 20 that the date of the hypothetical negotiation was 2010.  (Dkt. 449 at 18 (jury answering affirmatively interrogatory No. 20:  "Do you find that Sprint proved, by a preponderance of the evidence, that the appropriate date of the hypothetical royalty negotiation between the parties is 2010?").)  This finding was made after the jury was instructed that any reasonable royalty it awarded must be

what "would have [been] agreed to in a hypothetical negotiation taking place at a time *prior to when the infringing use first began*." (Dkt. 447 at 44 (emphasis added).) The necessary and inescapable implication from the jury's finding is that infringement began no earlier than sometime in 2010. Thus, Sprint's patents could not be "blocking" because it is undisputed that TWC began offering VoIP services that connected to the PSTN *in 2003*. In other words, if the date of TWC's first infringement was in 2010, such that TWC first began infringing the patents-in-suit in 2010 and was not infringing while practicing VoIP technology and connecting to the PSTN before 2010, then it cannot be the case that all VoIP services that connect to the PSTN infringe as required by Dr. Rao's "blocking patent" assumption. Because Dr. Rao's analysis (and Sprint's damages claim) depend on the critical assumption that the patents are "blocking," the damages verdict must be set aside in view of the jury's implicit finding that infringement commenced no earlier than 2010.

### 2.    Alternatively, If The Patents Are "Blocking Patents," Then The First Infringement Was In 2003, In Which Case Dr. Rao Has No Opinion

Even if there were sufficient evidence for the jury to find that Sprint's patents are "blocking patents" (and there is not), JMOL would still be warranted. If Sprint's patents are "blocking patents" such that they are required for connecting to the PSTN to provide VoIP services, TWC's date of first infringement would be in 2003 when TWC began connecting to the PSTN through Pine Tree, not in 2010 (as the jury implicitly found). But Dr. Rao has no opinion about damages based on a 2003 hypothetical negotiation date.

More specifically, and as explained in TWC's Rule 50(a) Motion, Sprint's "blocking patent" assumption and 2010 date-of-first-infringement theory are logically contradictory and create a Catch-22 conundrum. Under Sprint's definition of "blocking patents," every VoIP system that connects to the PSTN infringes. (Tr. 1068:22-1069:14 (Rao).) Thus, Sprint's

patents must necessarily cover all of TWC's non-Sprint VoIP-to-PSTN activities before 2010, which started with Pine Tree in 2003.  But Dr. Rao has no damages opinion, and Sprint has no damages claim, based on a hypothetical negotiation that occurred at any time other than 2010. (Tr. 1071:5-12, 1076:10-1078:8, 1079:23-1080:7 (Rao) (Dr. Rao conceding he "had done no analysis based on the assumption that the hypothetical negotiation was . . . anything other than 2010").)  Therefore, if the patents are "blocking," the damages verdict must be set aside for this separate and independent reason.  Sprint's damages theory rests on a Catch-22 of contradictory assumptions.

It does not matter that Sprint has only *accused* TWC of infringement starting in 2010. Rather, it matters when the conduct began.   In *LaserDynamics, Inc.*, 694 F.3d at 75-76, for example, the hypothetical negotiation date was 2003 even though defendant's liability started in 2006.  *See also*, *e.g.*, *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993) (hypothetical negotiation date was beginning of infringing conduct in 1987, even though defendant not liable until 1990); *Fromson v. W. Litho Plate and Supply Co.*, 853 F.2d 1568, 1574-77 (Fed. Cir. 1988) (similar), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004).

*Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 WL 1265009 (N.D. Cal. 2015), upon which Sprint relies, is inapposite because the activity accused of infringement there was an entirely different product from the earlier infringing product.  Here, Sprint has not and cannot distinguish in any way, much less a meaningful way, between TWC's pre-2010 activity and post-2010 activity.  By assuming that the patents are "blocking patents," Dr. Rao's damages opinion *requires* there be no meaningfully different ways of connecting VoIP to the PSTN.  Therefore, even if the evidence were sufficient to find that the patents are

"blocking" (and it is not), it follows that the date of first infringement was 2003, not 2010. And, because Sprint offered no evidence of a hypothetical negotiation that occurred at a time other than 2010, the damages verdict cannot stand. JMOL is still warranted.

### 3.      Regardless, Dr. Rao Admits That His Damages Opinion Ultimately Stems From "Junk Science"

Finally, TWC renews its argument that, even if there were sufficient evidence to find that 2010 is the hypothetical negotiation date (and there is not), there is insufficient evidence to support Sprint's damage request for another reason: Dr. Rao's proposed $1.37 royalty calculation is fundamentally flawed. (Dkt. 390 at 16-18.)[6] Dr. Rao testified (and TWC's expert, Dr. Putnam, confirmed) that Dr. Rao's damages opinion is based on the jury's verdict in *Vonage*. However, a prior verdict, and particularly the *Vonage* verdict tainted by the "25 percent rule of thumb" which the Federal Circuit rejected in *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011), and which Dr. Rao characterized as "junk science," is insufficient to support the verdict in this case. (*See* Tr. 1058:10-12, 1059:19-1060:19; *see also id.* 1055:2-22, 1111:7-17.) Therefore, Sprint has insufficient evidence to support its damages request which was the sole basis for the jury's damages verdict.[7]

---

[6] TWC acknowledges that the Court previously considered and rejected this argument, as well as TWC's objections to the admission, introduction, use of, or reliance upon the *Vonage* verdict for any purpose. (Tr. 1425:16-19; *see* Dkts. 134, 136, 151, 319 at 9-12, 325; *see also* Dkt. 286 at 4-5, 21-26, 342, 343 at 50:19-54:14.)

[7] There is also insufficient evidence for the jury's damages award for the additional reasons set forth in TWC's *Daubert* Motion and its Motions *in Limine* (Dkts. 136, Att. 1; Dkt. 319), including Dr. Rao's failure to comply with principles of apportionment, to support his opinion under the entire market value rule, failure to apportion the *Vonage* subscriber revenues based on the smallest salable patent practicing unit or otherwise, and his failure to apportion damages on a patent-by-patent by basis. (Dkt. 136, Att. 1 at 17 n. 10, 26-28; *see id.* at 10-28; *see also* Dkts. 151, 286 at 4-5, 21-32, 319 at 12-18, 325, 342, 343 at 50:19-54:14.)

**B.    The Court Should Grant JMOL Of Non-Infringement Or Alternatively, Order A New Trial On The Issue Of Infringement**

Sprint did not satisfy its burden of proving that TWC infringed any asserted patent claim, literally or under the doctrine of equivalents.  To prove that TWC literally infringed a claim, Sprint was required to introduce sufficient evidence at trial that the accused system meets every limitation of the claim.  *See, e.g., Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997).  To prove infringement under the doctrine of equivalents, Sprint bore the burden of satisfying either the insubstantial differences test or the function-way-result test.  *See Dawn Equip. Co. v. Kentucky Farms Inc*., 140 F.3d 1009, 1015-16 (Fed. Cir. 1998).  To satisfy these evidentiary burdens, Sprint was required to present expert testimony from which the jury could reasonably conclude that TWC infringed.  *See AquaTex Indus. v. Techniche Sols.*, 479 F.3d 1320, 1329 n. 7 (Fed. Cir. 2007) ("Even where literal infringement is involved, expert infringement testimony is generally required in cases involving complex technology."). [8] Without such testimony, "the jury is left to speculate" instead of making a reasoned factual determination based on evidence.  *In re Mirena*, 2016 U.S. Dist. LEXIS 99221, at *17; *id*. at *18-19 & n.13 (citing cases).  Conclusory expert testimony is insufficient to sustain a finding of infringement.  *See Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1358 (Fed. Cir. 2012) (affirming JMOL of non-infringement because expert's testimony was "conclusory").

---

[8] *See, e.g., Talvera v. Wiley*, 725 F.3d 1262, 1268 (10th Cir. 2013) (affirming medical malpractice summary judgment due to absence of admissible expert testimony); *Treaster v. HealthSouth Corp*., 442 F. Supp. 2d 1171, 1179-81 (D. Kan. 2006) (Lungstrum, J.) (granting partial summary judgment for defendants in medical malpractice case due to absence of admissible expert testimony); *In re Mirena HUD Prods. Liab. Litig.*, Nos. 13-MD-2434 (CS), 13-MC-2434 (CS), 2016 U.S. Dist. LEXIS 99221, at *15-19 & n. 13 (S.D.N.Y. July 28, 2016) (collecting cases) (granting defendants summary judgment for defendants in product liability case due to absence of admissible expert testimony).

Here, no reasonable fact finder could conclude that TWC infringed the asserted patents based on the testimony of Sprint's expert Dr. Wicker and Sprint's other evidence.  TWC is therefore entitled to JMOL of non-infringement or a new trial on the issue of infringement.

**1.    The Jury Had No Reasonable Basis To Find That TWC Performed The "In Response To" Limitation**

All of the asserted claims of the '052, '064, '084 and '429 patents (four of the five patents-in-suit) contain the "in response to" limitation.[9]  A device, such as the interworking unit, must convert or transfer a voice communication "in response to" receiving a particular message. The Court held that "in response to" has a "plain and ordinary meaning," and explained that this meaning includes "the concept of causation."  (Dkt. 98 at 52; Dkt. 348 at 5-7.)

Sprint failed to prove that TWC's interworking unit converts or transfers a voice communication "in response to" receiving a particular message.  Sprint's expert Dr. Wicker identified the "MDCX" (modify connection) message as the accused message for inbound calls and the "CRCX" (create connection) message as the accused message for outbound calls, and alleged that after receiving these messages, TWC's MGX media gateway (the accused interworking unit) converts and transfers voice.  (Tr. 601:15-23, 710:3-15 (CRCX), 829:16-830:7 (MDCX), 827:25-828:17 (same reasons for all the claims) (Wicker).)  Critically, however, Dr. Wicker never provided any basis for his assertion that the MGX converts voice "in response to" receiving these messages as required by the claims.  Instead, he testified that "in response to" receiving the message, the MGX performed a "*mapping*."  (Tr. 604:2-13, 838:2-10, 848:4-849:17 (Wicker).)  Sprint provided no evidence whatsoever that this mapping constitutes

---

[9] Sprint asserted the following independent claims:  1 ('052 patent (Trial Ex. 3)), 1 and 24 ('561 patent (Trial Ex. 2)), 1 ('064 patent (Trial Ex. 6)), 1 ('084 patent (Trial Ex. 7)) and 1 ('429 patent (Trial Ex. 5)).  If an independent claim is not infringed, its dependent claims are also necessarily not infringed.  (Dkt. 447 at 29.)

conversion and transfer—because it does not.  To the contrary, the undisputed evidence confirms this "mapping" is merely the establishment of a threshold correspondence between a DS0 and an IP address and port number that will be used when the MGX *later* performs the conversion. (*See, e.g.*, Tr. 758:9-16 (Wicker), Tr. 1656:9-20 (Cannon), Tr. 1741:24-1742:6 (Almeroth).)  But simply establishing that threshold correspondence does not cause any conversion or transferring to occur.[10]  Just like mapping out a road trip is far different than actually driving the car to the destination that has been mapped-out, the mapping performed by the MGX is far different than actually converting and transferring a communication.

Indeed, during closing argument, Sprint's counsel abandoned Dr. Wicker's allegation that merely performing "mapping" in response to the messages satisfies the "in response to" limitation.  Instead, he argued that the MGX converts and transfers "in response to" receipt of the MDCX and CRCX messages because, even though a number of intervening steps occur between the receipt of these messages and the converting/transferring, the converting/transferring all necessarily occur after the intervening steps "like a series of dominos" or like putting your "foot on the gas, and in response to that, [the] car goes forward."  (Tr. 2883:10-2884:16.)  However, Sprint introduced no evidence at trial to support its lawyer's domino theory.  That failure by itself means that the verdict cannot stand.

In contrast, TWC presented undisputed evidence that receipt of a MDCX/CRCX message is *not* the first in a series of dominos leading to converting/transferring because other events—

---

[10] It was also undisputed (and in fact admitted by Dr. Wicker) that what does occur "in response" to receiving the accused MDCX and CRCX messages is that the MGX sends a "200 OK message."  (Tr. 846:17-847:4 (Wicker), Tr. 1743:4-14 (Almeroth).)  The relevant protocol actually defines the "200 OK message" as being sent "in response to" receiving the MDCX and CRCX message.  (*Id.*)  Because this response does not satisfy the claims' requirement that conversion and transfer occur "in response to" the message, Dr. Wicker ignored it.  (Tr. 847:16-848:3 (Wicker).)

which may or may not occur in the normal course—must all occur in order for there to be any conversion or transfer.  (*See, e.g.*, Tr. 1653:17-1655-20 (Cannon), Tr. 1730:14-1733:20 (Almeroth).)   One of those events, for example, is the called party choosing to answer the ringing telephone, which may not occur.  (*See, e.g.,* Tr. 843:6-845:13, 846:8-16 (Wicker), Tr. 1742:19-22 (Almeroth).)  Sprint did not dispute TWC's evidence that no conversion or transfer of voice communications will occur after the MGX receives a MDCX/CRCX message unless the called party answers the phone and speaks.  (Tr. 846:8-16 (Wicker).)  Nor did Sprint dispute that many other intervening steps must occur in between receipt of the MDCX/CRCX message and any conversion or transfer (Tr. 845:20-846:2 (Wicker)), and that no conversion or transfer will occur unless those additional steps are successfully performed (Tr. 843:22-845:13, 846:12-16 (Wicker), Tr. 1739:24-1741:8 (Almeroth)).  Accordingly, judgment of non-infringement should either be entered in favor of TWC on the '052, '064, '084 and '429 patents, or a new trial should be ordered on infringement.

### 2.      The Jury Had No Reasonable Basis To Determine That The Accused System Satisfied Other Claim Limitations

**"Asynchronous communication":**  The term "asynchronous communication" appears in each asserted independent claim of the Broadband Patents.[11]  The Court explained that a person of ordinary skill in the art would understand the plain and ordinary meaning of "asynchronous communication" to require that "the transmitting and receiving devices do not share a common clock."  (Dkt. 98 at 40-41; Dkt. 348 at 5-7.)  Dr. Wicker agreed, testifying that "with regard to asynchronous, we said there's no timing relationship with regard to the packets and how they're transmitted and received" but that with synchronous "[t]here is going to be a timing relationship."  (Tr. 720:13-21 (Wicker).)

---

[11] The '064, '084, and '429 patents are collectively referred to as the "Broadband Patents."  The '561 and the '052 patents are together referred to as the "Call Control Patents."

Sprint failed to show that TWC's voice traffic constitutes "asynchronous communication(s)." It was undisputed at trial that: (1) voice packets in TWC's accused system must traverse a DOCSIS network (*see, e.g.*, Tr. 718:1-719:12 (Wicker)); and (2) TWC's DOCSIS network requires use of a shared clock to transmit and receive voice packets that must be sent in specific time slots (Tr. 1402:25-1405:13, 1707:19-23 (Almeroth)). Accordingly, judgment in TWC's favor therefore should be entered on each asserted claim of the '064, '084 and '429 patents.

**"Processing . . . to select":** The phrase "processing . . . to select" or "selecting" appears in claim 1 of the '429 patent, claims 1 and 24 of the '561 patent, and claim 1 of the '052 patent. It is the claimed "processing system" that must perform the "processing … to select," and what must be "selected" is a "network code" or "identifier" of a device used for egress from a "packet communication system." (Tr. 597:18-598:6, 641:25-642:16, 661:18-24, 737:8-738:15 (Wicker).) The Court construed "processing . . . to select" to mean "processing . . . to participate in the selecting." (Dkt. 98 at 28-31; Dkt. 285 at 12-16; Dkt. 346 at 26-29.) Sprint failed to show that TWC's accused "processing system" "participates in the selecting" of a "network code" or "identifier" because it is the MGX 8880 and eMTA, rather than the accused processing system, which perform these selections.

According to Sprint, the eMTA or MGX 8880 (depending on whether the call is an inbound or outbound call) is the device used for egress, and the IP address of that device is the accused "network code" or "identifier." (*See, e.g.*, Tr. 598:20-599:3, 662:2-23 (Wicker).) But the undisputed evidence, including from Dr. Wicker himself, is that the eMTA and MGX 8880 devices themselves select their own IP addresses—all the "processing system" does is ask the eMTA or MGX 8880 which IP address it wants to use. (*See, e.g.*, Tr. 663:14-19, 826:17-827:24

(Wicker).)  As TWC's expert Dr. Almeroth explained, that does not constitute participating in the selection.  (Tr. 1718:1-1723:13, 1725:22-1728:4 (Almeroth).)  Specifically, for an outbound call, TWC's accused "processing system" asks the MGX 8880 which IP address to use, and the MGX 8880 selects its own IP address and port number to use for the call and sends that address back to the "processing system."  (Tr. 1718:1-1723:13 (Almeroth).)   Similarly, for an inbound call, TWC's accused "processing system" asks the eMTA which IP address to use, and the eMTA selects its own IP address and port number to use for the call and sends that address back to the "processing system."  (Tr. 1725:22-1728:4.)  As Dr. Wicker acknowledged, the accused "processing system" merely receives the selected IP address, while it is the eMTA and MGX 8880 devices that actually select the IP address.  (Tr. 663:14-19, 822:16-25, 826:17-21, 827:17-24 (Wicker), 1646:11-18, 1653:17-1654:21, 1666:20-25 (Cannon), 1718:1-9, 1725:22-1726:7 (Almeroth).)  Based on this evidence, no reasonable fact finder could conclude that the accused systems satisfy the "processing . . . to select" limitation and judgment of non-infringement should be entered on these patents.[12]

**"Interworking Unit":**  All asserted claims of Sprint's Broadband Patents require an "interworking unit."  The Court construed "interworking unit" to mean "ATM interworking multiplexer."  (Dkt. 98 at 31-35; Dkt. 346 at 26-29.)  The function of an ATM interworking multiplexer is to convert content to/from ATM (asynchronous transfer mode) in order to interface an ATM network with some other type of network.[13]  Cisco's MGX 8880 (the alleged

---

[12] Moreover, a "network code" as used in the claims cannot be a mere IP address of an eMTA as Sprint alleged at trial.  It must include at least a port number because, as the patents themselves teach, egress is not possible without both the IP address and port number.  (*See, e.g.,* Trial Ex. 3 ('052 patent) 12:51-57.)   As Sprint did not present evidence on this claim requirement, TWC is entitled to JMOL for this additional reason.

[13] Sprint did not present any evidence as to how one of ordinary skill in the art would understand the meaning of "ATM interworking multiplexer."   In contrast, TWC's expert Dr. Almeroth,

"interworking unit") does not perform these functions in TWC's networks, leading the jury to find no literal infringement of this limitation.[14]  (Dkt. 449 at 1.)  The verdict therefore can only be sustained if Sprint proved that TWC's use of the MGX 8880 satisfies the "interworking unit" limitations under the doctrine of equivalents.  However, no reasonable jury could conclude that Sprint proved that TWC's use of the MGX8880 satisfies the "interworking unit" limitations under the doctrine of equivalents in light of the substantial, undisputed differences between an ATM interworking unit and TWC's IP-based MGX 8880.

First, the undisputed evidence shows that ATM uses virtual circuits to set up a fixed end-to-end path for a call that is maintained for the duration of the call, and that the role of the ATM interworking multiplexer in that process is to connect a circuit in the PSTN to an ATM virtual circuit.  (Tr. 1749:3-1750:19 (Almeroth).)   In contrast, basic IP (internet protocol) as used by TWC does not set up a fixed path for a call and does not use circuits or virtual circuits at all.  (*See, e.g.*, Tr. 1660:16-1662:23 (Cannon); Tr. 1780:8-1782:8 (Almeroth).)   Moreover, the "identifier" used in ATM and assigned by an ATM interworking multiplexer is a VPI/VCI that designates the next leg on the end-to-end path and has only local significance.  (Tr. 1782:9-1785:10 (Almeroth).)   In contrast, IP uses an IP address that designates an endpoint for the

---

presented substantial evidence that it is a device that converts content to and from ATM in order to interface an ATM network with some other type of network.  (Tr. 1744:15-24, 1747:10-1756:6 (Almeroth); Trial Ex. 2906 at 3; Trial Ex. 7 ('084 Patent), Abstract; Trial Ex. 7 ('084 Patent) at 2:38-41; Trial Ex. 7 ('084 Patent) at 1:57-59; Trial Ex. 7 ('084 Patent) at 4:35-37; Trial Ex. 7 ('084 Patent) at 5:8-10.)

[14] The undisputed evidence shows that, rather than converting to or from ATM, the MGX 8880 converts between TDM format and IP format.  (*See, e.g.*, 1777:7-15 (Almeroth).)  Although the MGX 8880 uses ATM to transport IP packets over a few inches of the device's backplane through encapsulation, it does not receive or output ATM cells and does not interface or connect to an ATM network. (*See* Tr. 1774:19-25, 1766:17-1767:3, 1777:7-15 (Almeroth).) Moreover, the evidence established that encapsulation is not a form of conversion.  (*See* Tr. 1754:14-1756:3 (Almeroth).)

communication and is recognized globally across the network.  (*Id.*)  Sprint's expert Dr. Wicker himself recognized these fundamental differences.  (Tr. 868:8-876:4 (Wicker).)

In light of these and other differences, no reasonable jury could conclude that "receiving" a communication in an ATM interworking multiplexer, "converting" a communication by an ATM interworking multiplexer, or "transferring" a communication from an ATM interworking multiplexer—as required by the claims—is only insubstantially different from the "receiving," "converting," and "transferring" performed by TWC's IP-based MGX 8880.  (*See* Tr. 1791:16-1795:18 (Almeroth).)  Dr. Wicker offered only conclusory testimony regarding the function-way-result test—alleging despite the conceded differences that the "function" and "result" were *identical*—and provided no evidence from which the jury could reasonably find that Sprint carried its burden.  (*See, e.g.,* Tr. 715:12-716:19, 725:25-727:3, 729:3-730:2 (Wicker).)

Instead, Sprint primarily relied on the "known interchangeability" factor and asserted that the MGX 8880 is equivalent to an ATM interworking multiplexer because its IP card can be swapped out for an ATM card.  (*See, e.g.,* Tr. 697:17-699:24 (Wicker).)  As an initial matter, while known interchangeability is a factor to consider, it is "certainly not dispositive."  *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1309 (Fed. Cir. 1998).  As a result, alleged evidence of known interchangeability does not remedy Dr. Wicker's conclusory testimony.  Moreover, Sprint's assertion merely speaks to the flexibility of the MGX hardware, but is in no way probative of whether an MGX having an IP card was known by those of skill in the art to be interchangeable with an ATM interworking multiplexer or even an MGX having an ATM card.  In fact, the only evidence presented at trial was that replacing the MGX 8880 IP card with an ATM card would prevent the device from working in an IP network—*i.e.*

they are ***not*** interchangeable.  (*See, e.g.,* Tr. 1663:18-23 (Cannon) (swapping out cards would require a "massive re-engineering effort"), 1789:2-10 (Almeroth).)

At least for these reasons, TWC is entitled to judgment that it does not infringe the Broadband Patents.

**"Identifier":**  The asserted claims of the '429 and '084 patents require "identifiers" that are received into and used by the ATM interworking multiplexer, which must be VPI/VCIs.  (Tr. 1750:13-19, 1762:2-10 (Almeroth), 2180:7-2181:4, 2186:17-2187:8 (Min).)   Sprint failed to prove that TWC's MGX 8880s use ATM identifiers as required by the claims.  In fact, the undisputed evidence is that TWC does not use ATM identifiers.  (*See, e.g.*, Tr. 1774:1-12 (Almeroth).)  Thus, judgment of non-infringement should be entered on these claims.

**"Formatted for a narrowband system":**  Claim 1 of the '052 patent requires "receiving signaling formatted for a narrowband system;" claim 1 of the '561 patent requires receiving signaling "from a narrowband communication system;" and claim 24 of the '561 patent requires sending signaling "to the narrowband communication system."  Sprint failed to prove that TWC meets these limitations, as it was undisputed at trial that TWC receives the accused signaling from and sends the accused signaling to Syniverse in IP format, not formatted for a "narrowband" system.  (*See, e.g.,* Tr. 638:6-16 (Wicker).)   Indeed, there is no evidence that Syniverse is a narrowband communication system. Thus, judgment of non-infringement should be entered on these claims.

**"Network element to provide egress":**  Claim 1 of the '052 and claim 1 of the '561 patent require a "network element to provide egress" from a "packet communication system." The egress refers to leaving one network to enter another network.  (*See, e.g.,* Trial Ex. 3, '052 patent, 12:46-57.)  Sprint failed to prove that TWC's accused eMTA meets these limitations.

The evidence shows that when a user communication is sent to an accused eMTA, it remains on TWC's accused packet network.  (*See, e.g.,* Tr. 581:15-21, 644:6-17 (Wicker).)  The subscriber located at the eMTA may answer her phone and participate in the call, but the user communication never "egresses" from the eMTA to another network.  (*Id.*)  Accordingly, TWC is entitled to judgment of non-infringement for the '052 patent and claims 1, 3, 15, and 23 of the '561 patent.

**"Converting the asynchronous communication into a user communication"**:  All asserted claims of the '064 patent require "converting the asynchronous communication into a user communication."  Sprint failed to prove that TWC performs this converting.  Indeed, no evidence exists that TWC ever converts an "asynchronous communication" from a form that is not a "user communication" into a "user communication."  TWC is therefore entitled to judgment of non-infringement for the '064 patent.

**Sending and receiving within the same system**:  Claim 1 of the '052 patent requires "transferring a packet . . . from the device to the packet communication system."  Sprint identifies TWC's MGX 8880 as the accused "device."  (Tr. 602:15-603:19 (Wicker).)  However, Sprint failed to show that TWC performs this limitation at least because the MGX 8880 is part of TWC's accused IP network (the alleged "packet communication system") and the accused packets never leave this network.  (Tr. 717:20-718:4 (Wicker).) Therefore, the MGX cannot send packets "to the packet communication system" any more than a person in the U.S. sending a letter to someone else in the U.S. can be said to be sending a letter "to the U.S."  Similarly, claims 1 and 24 of the '561 patent require "transferring . . . from the processing system to the packet communication system."  Sprint accuses TWC's BTS-T and/or CMS/IMS as the "processing system," but, again, these are indisputably part of the same accused packet

communication system.  (*See, e.g.*, Tr. 599:15-20, 648:16-649:14 (Wicker).)  Therefore, they cannot send "to" it.  Thus, TWC is entitled to judgment of non-infringement of the '052 and '561 patents.

### C.    The Court Should Grant JMOL Of Invalidity Or Alternatively, Order A New Trial

#### 1.    Sprint's Patents Are Invalid For Lack Of Written Description

A reasonable jury could only conclude that TWC proved by clear and convincing evidence that the asserted claims of Sprint's patents, as construed by the Court, fail to satisfy the written description requirement of 35 U.S.C. § 112 and are therefore invalid because the inventor was not in possession of the as-construed, claimed subject matter.

The specification of the Call Control Patents purports to disclose a new way to use a signaling network to set up a fixed end-to-end path for a call before the calling and called parties can speak.  (*See, e.g.,* Tr. 2158:16-2159:2 (Min).)  To do this, the specification purports to disclose the use of ATM switches that can receive signaling to setup a path on a call-by-call basis.  (*See, e.g.,* Tr. 2164:17-2165:11 (Min).)  However, such ATM switches did not exist in the first place and were not described in the patents.  (Tr. 2174:7-2176:14; Trial Ex. 5, '429 patent, 1:45-56.)  Consequently, the inventor could not have had possession of the alleged invention. *See Novozymes A/S v. Dupont Nutrition Biosciences APS*, 723 F.3d 1336, 1344 (Fed. Cir. 2013) ("A 'mere wish or plan' for obtaining the claimed invention does not satisfy the written description requirement."); *Fiers v. Revel*, 984 F.2d 1164, 1171 (Fed. Cir. 1993) (recognizing that "one cannot describe what one has not conceived").

Moreover, it is undisputed that the claims as construed by the Court are broad enough to encompass telephone calls made over IP networks, which do not set up end-to-end communication paths and do not use separate signaling networks.  (Tr. 2254:22-2255:1 (Min).)

Therefore, even if the purported ATM switches had existed, the specification fails to disclose an IP network for voice or an invention having applicability to IP networks. (Tr. 2135:23-2136:12 (Min).)  The Call Control specification simply cannot support claims that cover making telephone calls over IP networks, and the as-construed, asserted claims of the Call Control Patents must therefore be held invalid for lack of written description.

All claims of the Broadband Patents require an interworking unit, which the Court has construed to mean an ATM interworking multiplexer. (Dkt. 98 at 31-35; Dkt. 346 at 26- 29.) But according to the Court, and as Sprint has relied on in filings, several other terms in the claims of the Broadband Patents have not been limited to ATM, including "identifier," "routing," and "asynchronous communication." (Dkt. 98 at 18, 27, 42; Dkt. 285 at 10; Dkt. 333 at 17-18.) Without such limitations, these broad terms are not supported by the Broadband Patents specification, which discloses only ATM identifiers, ATM routing, and ATM asynchronous communications. (Tr. 2182:13-2186:5 (Min).)  Because the claims of the Broadband Patents have been interpreted to cover IP identifiers, IP routing, and asynchronous communications that are IP, the claims of the Broadband Patents must be held invalid for lack of written description.

### 2.     Sprint's Patents Are Invalid As Anticipated And Obvious

A reasonable jury could only conclude that TWC proved by clear and convincing evidence that the asserted claims of Sprint's patents are invalid over the prior art as both anticipated and obvious.  TWC's evidence and expert witnesses established that the asserted claims are anticipated by Larry Schessel's European Patent Application No. 0 578 964 A2 (herein "EP '964") and obvious over EP '964 in combination with either the knowledge of a person of ordinary skill in the art or the 1991 publication Vision O.N.E. – Optimized Network Evolution by Messrs. Binder and Schaffer (herein "Telcom Report").

22

TWC's expert Dr. Henry Houh testified that these prior art references disclose the claimed architecture—such as a call processor and ATM interworking multiplexer—and explained, on an element by element basis, how each claim limitation is either taught by EP '964 or obvious in combination with knowledge of a person of ordinary skill in the art or the Telcom Report. (*See, e.g.,* Tr. 2322:14-2359:24, 2362:10-25, Tr. 2363:1-2364:8 (Houh).) Dr. Wicker only offered conclusory testimony to the contrary. (Tr. 2728:18-2729:10 (Wicker).)

JMOL, or alternatively, a new trial, is accordingly appropriate on the issue of invalidity for all asserted claims.

### D. The Court Should Grant JMOL Of No Willfulness

To prove willful infringement, Sprint had the burden of putting forth sufficient evidence for a reasonable jury to conclude that TWC offered the accused VoIP services with knowledge that they infringed the patents. *See Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923, 1933 (2016). Under the Court's instructions, this required proof that TWC acted under a "risk of infringement that was . . . known or so obvious that it should have been known" to TWC. *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) (quotation omitted); (Tr. 2803:12-20).[15] Despite the jury's verdict, the evidence cannot reasonably allow a finding that TWC implemented the accused VoIP services with knowledge that they infringed.

As the Court found in its post-trial ruling on the issue of enhancement, "[t]here was no evidence that Time Warner Cable actually knew that it was infringing." (Dkt. 476 at 32 n.8.)

---

[15] Over TWC's objections, the Court held that the jury should not be instructed on whether the alleged willful infringement was "egregious"—*i.e.*, "wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or . . . characteristic of a pirate." *See Halo Elecs., Inc.*, 136 S. Ct. at 1933; (*see* Tr. 2803:2-20). TWC maintains its objection to the Court's final jury instruction on willfulness because it omits the foregoing standard and allows willfulness based merely on whether the risk was known or "so obvious" that is should have been known (Tr. 2803:21-22, 2804:18-24) and maintains that Sprint presented insufficient evidence that TWC engaged in "egregious" conduct under the proper standard (Dkt. 432 at 23-24). Regardless, Sprint's evidence was insufficient for a willfulness finding even under the Court's instructions.

Similarly, Sprint adduced insufficient evidence that TWC should have known of infringement in view of Sprint's undisputed failure to identify any of its patents for seven years with full knowledge of TWC's VoIP service offering, its failure to ever assert TWC infringed its patents prior to suit, and its vague identification of only two of its patents seven years after TWC commenced use of the very same PacketCable technology accused of infringement here. A reasonable jury could only conclude that TWC believed it was not engaging in infringing activity. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1340-41 (Fed. Cir. 2016) (belief regarding non-infringement relevant to willfulness finding); *see also Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1530 (Fed. Cir. 1993) ("[W]illfulness requires the fact-finder to find . . . that the infringer *acted in disregard of the patent* . . . [and] *had no reasonable basis for believing it had a right to do the acts*."  (emphasis added) (quotation omitted)); *see also Eastman Kodak Co. v. Agfa-Gevaert NV*, 560 F. Supp. 2d 227, 305 (W.D.N.Y. 2008) ("not unreasonable for Defendants to believe that products in the market for years were free of infringement" after receiving no accusation of infringement for six years).  Indeed, TWC's belief that its activities were not infringing is underscored by the fact that, as this Court found, TWC "did not deliberately copy Sprint's ideas or design" in its accused 2010 Go It Alone VoIP network.  (Dkt. 476 at 32.)

The Court should thus grant JMOL of no willfulness.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, TWC respectfully requests that the Court enter JMOL, or alternatively, order a new trial on the issues specified.

DATED:  April 11, 2017

/s Terrence J. Campbell
Terrence J. Campbell, KS #18377
Catherine C. Theisen, KS #22360
BARBER EMERSON, L.C.
1211 Massachusetts St.
P.O. Box 667
Lawrence, Kansas 66044
Telephone: (785) 843-6600
Fax: (785) 843-8405
tcampbell@barberemerson.com
ctheisen@barberemerson.com

/s Ron E. Shulman
Ron E. Shulman CA# 178263
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Fax: (650) 463-2600
ron.shulman@lw.com
Admitted *pro hac vice*

Lawrence J. Gotts VA# 25337
LATHAM &WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Fax: (202) 637-2201
larry.gotts@lw.com
Admitted *pro hac vice*

John T. Ryan CA# 211899
LATHAM &WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-3930
Fax: (858) 523-5450
jake.ryan@lw.com
Admitted *pro hac vice*

David S. Benyacar NY# 2481794
Daniel L. Reisner NY# 2685543
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710

25

Telephone: (212) 836-8000
Fax: (212) 836-8689
david.benyacar@apks.com
daniel.reisner@apks.com
Admitted *pro hac vice*

*Attorneys for Time Warner Cable Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2017, DEFENDANTS TIME WARNER CABLE, INC., ET AL.'S MEMORANDUM IN SUPPORT OF MOTION UNDER RULES 50(b) AND/OR 59(a) FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL was filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification of filing to all attorneys of record.


s/ Terrence J. Campbell
Terrence J. Campbell